[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-10911

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 26, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00233-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JON FIELDING YOST,
a.k.a. northatlguy2005,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 26, 2007)**

Before BIRCH and BLACK, Circuit Judges, and MILLS,* District Judge.

PER CURIAM:

_____

*Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

Jon Fielding Yost appeals his convictions of two counts of using the Internet to knowingly attempt to persuade, induce, entice or coerce a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b). Yost argues the evidence at trial was insufficient to prove he attempted to commit the charged crimes. Specifically, Yost claims the Government failed to show both that he had the requisite intent to commit the crimes and that he committed a substantial step in furtherance of the underlying crimes. We affirm.

## I. PROCEDURAL BACKGROUND

On July 19, 2005, a federal grand jury issued a First Superseding Indictment charging Yost with three counts of attempt under 18 U.S.C. § 2422(b). The Indictment alleged Yost, using the Internet, attempted to knowingly persuade, induce, entice or coerce three minors to engage in criminal sexual activity: (1) "lynn_in_atl," a 13-year-old girl (Lynn); (2) "mandygirlinatl," a 14-year-old girl (Mandy); and (3) "candi_in_atl," a 15-year-old girl (Candi). On October 21, 2005, a jury found Yost guilty on two counts of the Indictment relating to Lynn and Candi. Yost was found not guilty on the third count relating to Mandy.

## II. FACTS PRESENTED AT TRIAL

In April 2005, Special Agent Tammy McCravy of the Secret Service's Electronic Crimes Task Force conducted an undercover investigation on the

2

Internet to detect child exploitation. Throughout the investigation, Agent McCravy logged onto the Yahoo! Atlanta Regional chat room as Lynn, Mandy and Candi. Yost, under the screen name "northatlguy2005," communicated with all three girls.[1]

A. *"Lynn_in_atl"*

On April 11, 2005, Yost contacted Lynn and asked for her age, sex, and location. When Lynn responded she was a 13-year-old female, he asked if her body was mature and if she had "any boobs yet." Yost asked what size bra and jeans she wore, how long her hair was, and if she had a "nice little bubble butt." He told her she sounded "hot" and that he "like[d] the young ones."

Recognizing Lynn was only 13, Yost wrote, "I guess you haven't had sex or oral sex." He asked if she would "suck it" and described in detail how to perform oral sex. He posted a picture of his face and asked Lynn if she'd like to meet him. Lynn responded, "Yeah, [but] I don't want to get in trouble . . . . You can't tell." Yost replied, "I know, neither can you."

Yost told Lynn he had a "really big dick" and asked if that was "okay." When Lynn asked what he was going to do with it, he answered, "I don't think I

---

[1] The specific facts related to Yost's communications with Mandy are not discussed in this opinion.

would fit inside you, I'd only let you suck it." Later, Yost asked Lynn if she wanted to see how big he was and told her to go to his profile to see a picture of his genitalia. Yost asked Lynn, "Want that in your mouth . . . Do you want it inside of you?"

Lynn told Yost he would have to drive to Marietta for them to meet because she couldn't drive yet. Yost said that was fine and asked where they could meet. Lynn then ended the chat, telling Yost her mom was home and she would send him a message later.

Two days later, on April 13, 2005, Lynn and Yost chatted again. Yost asked Lynn if she "still want[ed] to get together" and if she would keep it "a secret." He warned her, "You can't tell a soul." When Lynn asked why Yost was interested in a 13-year-old, he answered, "Sometimes I like to have a girl your age suck it." He explained that "It's fun to watch them try to handle a nine-and-a-half-inch dick." He told Lynn it would hurt only at first, and he would "pull out" so she didn't get pregnant. Yost then asked Lynn where she wanted to meet and if he should come to her house. Lynn replied that she thought her mom would be gone Friday and asked if she could send him a message the next day to confirm. Yost agreed. As they signed off, Yost told Lynn to "think about how I will feel inside of you."

On April 14, 2005, Lynn and Yost engaged in another conversation. This time, they agreed to meet at the McDonald's by Lynn's house at 9:30 a.m. the next day. Yost asked Lynn for her phone number and told her he had to hear her voice before he would drive to meet her. Lynn gave him a number, which he called. Special Agent Lisa Haynes answered the phone, pretending to be Lynn. After the conversation, Yost wrote, "You sound so sweet." He assured Lynn, "I won't hurt you, I just want you to suck my dick." He also reminded her how large his penis was and asked if she was sure she wanted to "start with a man that has a huge dick."

The next morning, law enforcement agents waited outside McDonald's for Yost to arrive. He never showed up. At 10:51 a.m., Yost wrote Lynn to apologize. Lynn asked if he still wanted to meet, and he responded, "I do." Lynn told him they could maybe meet the following week, and then she signed off, telling Yost her mom was home. That was the last conversation between Yost and Lynn.

B. *"Candi_in_atl"*

Yost chatted with "Candi_in_atl" a number of times between April 13, 2005, and April 22, 2005. On April 13, Yost sent Candi a message asking for her age. Candi replied that she was 15. He asked for a picture, and when she said she

didn't have one, he asked what she looked like and how much she weighed. Candi told Yost she was 5'7" and 120 lbs., and he replied that it sounded like she had "a hot body." Candi asked Yost what he looked like and if he had any pictures. Yost posted a picture of his face in the chat box, and after Candi told him she couldn't see it, he emailed it to her.

Later, Yost asked Candi if she had "big boobs" and a "nice butt," and if she had ever been with an older guy. Yost told her he had "messed" with younger girls before and asked if Candi wanted to meet him. He told her he'd "love to hit that tight body" and would do it "[f]rom behind" and "on top." He warned her, "I f***really, really hard." Yost posted a picture of his genitalia on his profile and told Candi he didn't think she could handle his size. He also sent her an email of the picture. Candi ended the conversation and told Yost she would send him a message later.

That same day, in response to Yost's prior request for a picture, Candi sent Yost a photograph of herself. The photograph was an actual picture of Agent McCravy, digitally regressed to make her face look younger.

Sometime between April 15, 2005, and April 21, 2005, Yost and Candi chatted again. During that conversation, Yost told Candi he was leaving for a business trip to Miami, Florida. Candi sent Yost a few offline messages, asking if

Miami was fun and if he was back from his business trip. On April 21, 2005, Yost contacted Candi. After briefly chatting about his trip, Yost told Candi he wanted "to see that hot body" and "get all up inside of [her]." Yost and Candi discussed meeting, and Candi asked if he wanted to be her first and if he cared she was only 15. Yost replied, "Yes . . . But under some conditions . . . This is only for sex, we obviously can't be in a relationship." Soon thereafter, Candi signed off, telling Yost she had to go to bed.

The next morning, April 22, 2005, Yost and Candi chatted again. Yost asked Candi if she "want[ed] to hook up" that afternoon and told her "I probably just have time to let you suck my dick today." Candi and Yost planned to meet outside the Cumberland Mall food court at 2:00 p.m. Candi told Yost she would be wearing jeans, a green shirt, and a white Gap hat. Yost said he would be driving an "Explorer." Before signing off, Yost asked, "You ready to suck a really big dick. . . . I will want you to suck it right away."

Agent McCravy waited outside the food court at 2:00 p.m. on April 22, 2005, wearing jeans, a green shirt, and a white Gap hat. Less than a minute later, Yost pulled up in a maroon Ford Explorer. Before he had a chance to exit the car, law enforcement agents surrounded his car and arrested him. The agents seized a laptop computer from the Explorer. A forensic agent analyzed the laptop and

7

discovered the screen name "northatlguy2005" and the picture of Candi on its hard

drive. The examination also confirmed that Yost communicated with the screen

names "lynn_in_atl," "mandygirlinatl," and "candi_in_atl."

## III. STANDARD OF REVIEW

On appeal, Yost challenges the jury verdict convicting him of two counts of

attempt under 18 U.S.C. § 2422(b). We review a verdict challenged for

sufficiency of the evidence *de novo*, resolving all reasonable inferences in favor of

the verdict. *United States v. Pineiro*, 389 F.3d 1359, 1367 (11th Cir. 2004). We

cannot disturb the verdict "unless no trier of fact could have found guilt beyond a

reasonable doubt." *United States v. Lyons*, 53 F.3d 1198, 1202 (11th Cir. 1995).

## IV. DISCUSSION

Section 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or
> foreign commerce, . . . knowingly persuades, induces, entices, or
> coerces any individual who has not attained the age of 18 years, to
> engage in prostitution or any sexual activity for which any person can
> be charged with a criminal offense, *or attempts to do so*, shall be
> fined under this title and imprisoned not less than ten years or for life.

18 U.S.C. § 2422(b) (emphasis added). Yost was convicted of *attempt* under the

statute because no actual minors were involved.[2] To sustain Yost's convictions,

---

[2] In *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002), we held that an actual
minor is not required for a Section 2422(b) attempt conviction. It is sufficient that a defendant

8

we must determine he (1) had the specific intent or mens rea to commit the underlying charged crimes, and (2) took actions that constituted a "substantial step toward the commission of [each] crime." *Root*, 296 F.3d at 1227-28.

On appeal, Yost argues the evidence at trial was insufficient to sustain his attempt convictions. First, Yost claims he lacked the specific intent to commit the underlying crimes. He alleges he was never in a position to engage in sexual activity and his conduct amounted to nothing more than "talk." Yost also alleges that because he never traveled to meet Lynn and did not voluntarily exit his car and approach Candi, he did not commit a substantial step in furtherance of either crime. Yost further claims there is an innocent explanation for why he traveled to meet Candi—he went to confirm he was engaging in chats with an adult woman role-playing as a minor.

To satisfy the first element of attempt, we must determine Yost acted with the specific intent to persuade, induce, entice or coerce Lynn and Candi to engage in criminal sexual activity. *Murrell*, 368 F. 3d at 1287.[3] The evidence at trial showed Yost initiated contact with both Lynn and Candi, and that both girls told

_____

believe a minor is involved. *Id.*

[3] In *Murrell*, we explained that 18 U.S.C. § 2422(b)'s underlying proscribed criminal conduct is the "persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself." Thus, we are not required to find Yost acted with the specific intent to engage in sexual activity. 368 F.3d at 1286.

9

Yost they were under-age multiple times. Nothing in the transcripts supports Yost's claim he believed he was communicating with adult women role-playing as minors. Yost repeatedly asked Lynn and Candi to engage in oral sex and sexual intercourse, posted pictures of his genitalia, and made arrangements to meet them. He also arrived at the scheduled time and place to meet Candi. Based on this, we conclude that a reasonable jury could find Yost had the specific intent to persuade, induce, entice or coerce Lynn and Candi to engage in criminal sexual activity.

To satisfy the second element of attempt, we must determine that Yost took a substantial step toward the commission of the underlying crimes. A substantial step can be shown when the defendant's objective acts mark his conduct as criminal and, as a whole, "strongly corroborate the required culpability." *Murrell*, 368 F.3d 1283, 1288 (11th Cir. 2004).

The evidence at trial shows Yost committed the following objective acts toward Lynn. Yost repeatedly sent sexually-explicit messages and asked if her body was mature, and if she had breasts and a "nice little bubble butt." He described how to perform oral sex and asked Lynn to "suck it." He posted a picture of his genitalia and asked if she "wanted it in her mouth," or "inside" of her. He called Lynn on the telephone and, after hearing her voice, made arrangements to meet her so they could engage in sexual activity. These acts,

10

taken as a whole, strongly corroborate Yost's culpability and provide clear evidence that his conduct was criminal. Accordingly, we find Yost took a substantial step in an attempt to knowingly persuade, induce, entice or coerce Lynn to engage in criminal sexual activity.

We are not convinced by Yost's argument that his failure to arrive at the meeting place precludes a finding of a substantial step. Although this is the first time we have been confronted with an attempt conviction under 18 U.S.C. § 2422(b) where travel is not involved, two other circuits have examined the issue and determined travel is not necessary to sustain such a conviction. In *United States v. Bailey*, 228 F.3d 637, 639-40 (6th Cir. 2000), the Sixth Circuit affirmed a conviction under Section 2422(b) where the defendant sent e-mails proposing oral sex and attempted to set up meetings with minor females, albeit unsuccessfully. Similarly, in *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005), the Tenth Circuit affirmed a Section 2422(b) attempt conviction, despite a lack of evidence of travel. The Tenth Circuit stated: "Thomas crossed the line from 'harmless banter' to inducement the moment he began making arrangements to meet [the minor], notwithstanding the lack of evidence that he traveled to the supposed meeting place." *Id.* Viewing the totality of Yost's actions, we likewise conclude Yost crossed the line from mere "talk" to inducement. In addition to his

11

online chats with Lynn, Yost called Lynn on the telephone, posted pictures of his genitalia online, and made arrangements to meet her. Despite a lack of evidence of travel, the totality of Yost's actions convinces us that a reasonable jury could have found Yost committed a substantial step.

The evidence at trial also shows Yost took a substantial step toward persuading, inducing, enticing, or coercing Candi to engage in criminal sexual activity. Yost told Candi he wanted to "hit that hard body" and that he would "f*** really, really hard." He posted a picture of his genitalia and told her he didn't think she could handle his size. He told her he wanted to "get all up inside" of her and he wanted her to "suck [his] dick." He also arranged to meet Candi and traveled to the meeting spot. Yost's actions, taken as a whole, "strongly corroborate [his] culpability and provide clear evidence that his conduct was criminal." *Murrell*, 368 F.3d at 1288.

Accordingly, we hold that the evidence at trial was sufficient for a reasonable jury to convict Yost of both attempt counts under 18 U.S.C. § 2422(b).[4]

---

[4] We further conclude the district court did not abuse its discretion in allowing Yost's estranged wife to testify.

12

## V.  CONCLUSION

Based on the foregoing, we affirm Yost's convictions.

AFFIRMED.