[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12530
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 14, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00225-CR-ORL-35KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE O. RIVERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 14, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Jose O. Rivera appeals from his conviction for attempt to persuade, induce, or entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). On appeal, Rivera argues that the district court erred in denying his motion to suppress post-*Miranda*[1] statements that he made to a police officer. Specifically, Rivera argues that any waiver of his *Miranda* rights was involuntary because, immediately before he signed a form acknowledging that he understood his rights under *Miranda*, a police officer caused him distress by falsely informing him that a minor girl, with whom Rivera had planned to meet, was missing. In support of this argument, Rivera points to media reports that minor girls who lived in Florida were reported missing in 2008 and 2009, and contends that these media reports heightened his distress upon hearing the officer's false statement.

Rivera also argues that the district court erred in denying his motion for a judgment of acquittal under Fed.R.Crim.P. 29, because the evidence did not show that he specifically intended to induce a minor girl into engaging in sexual activity. In support of this argument, he asserts that the photographs that accompanied the online profile of the purported minor that he was communicating with depicted a girl who was older than 14 years old. In addition, he asserts that, when he spoke with this purported minor on the telephone, she sounded like an adult woman.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2

Rivera further argues that he did not take a substantial step toward committing this offense because he merely drove by the location where he had arranged to meet with the purported minor, and did not slow down or stop at this location.

For the reasons set forth below, we affirm.

## I.

A federal grand jury indicted Rivera, charging him with attempt to persuade, induce, or entice a minor into engaging in sexual activity, in violation of 18 U.S.C. § 2422(b). Rivera subsequently filed a motion to suppress statements that he made to a police officer. In his motion, Rivera explained that, on June 5, 2007, police officers stopped him because they believed that he had attempted to meet with a minor girl for the purpose of engaging in sexual activity. Rivera claimed that an officer placed him into custody, and then interrogated him for nearly 20 minutes without informing him of his *Miranda* rights. Rivera argued that, because the officer subjected him to custodial interrogation without informing him of his *Miranda* rights, the statements that he made during this interview should be suppressed. He did not argue that his statements to the officer were involuntary.

The district court held a hearing regarding Rivera's motion to suppress. At the hearing, Michael Spadafora, an agent employed by the Brevard County Sheriff's Office, testified that he had been conducting surveillance on June 5 when

3

he observed Rivera drive by the location where he had arranged to meet with a purported minor girl. Spadafora, who was in an undercover vehicle, followed Rivera and instructed another police officer to stop Rivera. After Rivera was stopped, Spadafora approached him and informed him that he was not free to leave. Spadafora told Rivera that he knew that he was there to meet Kaylee, the purported minor girl with whom he had arranged a meeting. He next informed Rivera of his rights under *Miranda*.

During his testimony, Spadafora identified a form as the Brevard County "*Miranda* Rights Advisement" form. Spadafora had read Rivera his *Miranda* rights from this form, and Rivera had placed a check mark on the form to acknowledge that he understood his rights. Rivera had also signed and dated the form. After Rivera signed the form, Spadafora escorted him to the passenger's side of a police car and, once Rivera was seated, closed the door. He subsequently conducted a taped interview with Rivera while they were inside of the police car. Spadafora averred that, during the interview, he did not threaten Rivera, promise him anything in exchange for his waiver of his *Miranda* rights, coerce him, or use physical force against him. Based on his observation, Spadafora believed that Rivera had understood his rights and had voluntarily and intelligently waived those rights.

On cross-examination, Spadafora clarified that, immediately after Rivera was stopped, he told Rivera that Kaylee was missing, that he knew that Rivera was there to meet Kaylee, and that he needed to talk to Rivera about the fact that she was missing. In his testimony, Spadafora admitted that Kaylee was fictional, and that he had thus lied to Rivera when he told him that Kaylee was missing. He explained that he had told Rivera that Kaylee was missing as an interview tactic. Spadafora confirmed that he told Rivera that Kaylee was missing immediately before he informed Rivera of his *Miranda* rights. Based on his observation of Rivera while they reviewed the Miranda rights on the form, Spadafora believed that Rivera may have been nervous, but was not "very upset."

Rivera testified that no one read him *Miranda* warnings before he got into the police car and began his interview with Spadafora. He further testified that he felt "confused and worried" when Spadafora informed him that Kaylee was missing, and that, due to this false information, he "wasn't all there" during his interview with Spadafora.

After the conclusion of the evidence, Rivera argued that the evidence did not clearly show that he had waived his *Miranda* rights, but he did not argue that any waiver of his *Miranda* rights was involuntary. The court denied Rivera's motion, finding that his testimony was not credible. The court found that the documentary

5

evidence, as well as an audio recording of Rivera's interview with Spadafora, demonstrated that he had knowingly waived his *Miranda* rights. In addition, the court noted that, while Rivera had testified that he had felt worried and confused during his encounter with Spadafora, he had the presence of mind to recall the nature and timing of the statements that he had made to Spadafora. Accordingly, the court concluded that Rivera had voluntarily, knowingly, and intelligently waived his *Miranda* rights before making statements to Spadafora.

At trial, Spadafora testified that on June 1, 2007, he engaged in an internet chat session with an individual who identified himself as "Jletsplay27." "Jletsplay27" was later identified during the trial as Rivera. Throughout the chat, Spadafora posed as a 14-year-old female named Kaylee, and used a screen name of "Kaylee13FL." During the conversation, Rivera repeatedly asked Kaylee if they could "hook up." Kaylee told Rivera that she was 14 years old, and did not want him to "freak out" about her age. Rivera responded that, based on the photographs that accompanied Kaylee's online profile, she looked older than 14 years old. He also stated that they could still meet if she desired to do so, and that no one would have to know about it. He then asked Kaylee if she was a police officer, and informed her that he did not want to go to jail. Rivera next made suggestions to Kaylee about various sexual activities they could engage in, and asked if he could

6

call her.  Kaylee gave him her telephone number, but asked him not to call her without any advance warning because she would be in trouble if her mother found out about her contact with him.  She also informed him that she often would be available on the internet because school was in recess for the summer.  Later that day, Rivera had a telephone conversation with Vicki Sumlin, a female undercover agent posing as Kaylee.  The government played an audio recording of this conversation in open court.

On June 4, 2007, Rivera and Kaylee had another online conversation.  During this conversation, Rivera and Kaylee discussed having sex with each other, and Rivera asked Kaylee about the extent of her previous sexual experience.  Kaylee informed Rivera that her previous sexual experience was limited, and that her friends had informed her that intercourse was painful.  She reiterated her request that he not call her when her mother was at home because she "would get in big trouble."  Rivera asked Kaylee if she was willing to meet with him in person, and she suggested that they meet at the high school on Mustang Way.  Rivera asked Kaylee how she would manage to "get out" in order to meet with him.  He also reasserted his concern that she could be a police officer.  Rivera asked if they could meet on the next day, and Kaylee agreed.

On June 5, 2007, Rivera again contacted Kaylee online.  Rivera asked

Kaylee what time she wanted to meet, and they agreed that they would meet at the high school at approximately 1:30 p.m. Kaylee informed Rivera that her mother was at home, but that she would tell her mother that she was going to a friend's house. She also told Rivera that she would be wearing a blue skirt and a white top, and Rivera told Kaylee that he would be driving a white van.

After this conversation with Rivera, Spadafora contacted several additional police officers in order to set up surveillance on Mustang Way. After setting up surveillance, Spadafora observed that, just after 1:30, a white van drove by the high school. The van's driver's side window was down, and Spadafora was able to identify the driver as Rivera based on a photograph that Rivera sent to Kaylee during their June 1 conversation. As noted above, Spadafora apprehended and subsequently interviewed Rivera. During this interview, he learned that Rivera's home address was approximately 45 to 60 minutes away from the high school on Mustang Way. Spadafora identified a set of photographs as the photographs that he used for Kaylee's profile, and these photographs were published to the jury.

Sumlin testified that she was employed by the Brevard County Sheriff's Office, and that she had assisted Spadafora in investigating this case by playing the role of a 14-year-old female during a telephone conversation with Rivera. On cross-examination, she testified that she was 35 years' old.

8

After the conclusion of the government's case, Rivera moved for a judgment of acquittal under Fed.R.Crim.P. 29. He argued that the evidence showed that he had not believed that Kaylee was only 14 years old, pointing out that Kaylee expressly mentioned her age only once during the online conversations. Thus, he contended that he lacked the specific intent necessary to violate § 2422(b). Rivera also argued that he did not take a substantial step toward inducing a minor into engaging in sexual activity because he merely drove by the high school, and there was no evidence that he slowed down or stopped at the high school. The court denied the motion, finding that the government had presented sufficient evidence to permit the case to go to a jury. Rivera did not present any evidence in his own defense. The jury found Rivera guilty of attempt to persuade, induce, or entice a minor into engaging in sexual activity. The court sentenced him to a term of 120 months' imprisonment.

## II.

Generally, "we review a district court's denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed *de novo* and findings of fact reviewed for clear error." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). In addition, we view the facts "in the light most favorable to the prevailing party in [the] district court." *Id.* It is within the district

court's province to make credibility determinations, and these determinations generally are conclusive unless the court credits "exceedingly improbable" testimony. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation omitted).

Where a defendant fails to raise an argument to the district court, we review the argument on appeal only for plain error. *United States v. Young*, 350 F.3d 1302, 1305 (11th Cir. 2003) (holding that, because the defendant did not raise a particular ground for suppression of the evidence before the district court, we would review the claim only for plain error); *see also United States v. Lewis*, 492 F.3d 1219, 1222 (11th Cir. 2007) (recognizing that "the simple failure to assert a right, without any affirmative steps to voluntarily waive the claim, is a forfeiture to be reviewed under the plain error standard embodied in [Fed.R.Crim.P.] Rule 52(b)"). Under the plain-error standard of review, an appellant must demonstrate that: (1) an error has occurred, (2) the error was plain, and (3) the error affected substantial rights. *Lewis*, 492 F.3d at 1222. If these conditions are met, we may exercise our discretion to correct the error, but only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

Under *Miranda*, officers must advise an individual who is in custody of the

following: (1) his right to remain silent; (2) that, if he chooses to speak, anything he says can be used against him in court; (3) his right to consult with a lawyer and have his lawyer be present during interrogation; and (4) an explanation that, if he is indigent, a lawyer will be appointed to represent him. 384 U.S. at 467-73, 86 S.Ct. at 1624-27. Statements obtained in violation of *Miranda*, whether exculpatory or inculpatory, are not admissible at trial. *Id.* at 444, 86 S.Ct. at 1612. The government must "prove by a preponderance of the evidence that the defendant waived his rights voluntarily, knowingly, and intelligently." *United States v. Glover*, 431 F.3d 744, 748 (11th Cir. 2005). We have explained that:

> The standard for evaluating the voluntariness of a confession is whether a person made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him. Voluntariness depends on the totality of the circumstances and must be evaluated on a case-by-case basis.

*United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1363 (11th Cir. 1984) (quotation omitted). A police officer's trick, standing alone, will not render a confession involuntary. *Id.* at 1363.

Here, because Rivera failed to clearly raise his involuntariness argument before the district court, we review this argument on appeal for plain error. Rivera cannot demonstrate error, let alone plain error, because, under the totality of the circumstances, Spadafora's statement that Kaylee was missing was not

11

sufficient to cause Rivera's subsequent, post-*Miranda* statements to be involuntary. Both the documentary evidence and the audio recording of Rivera's interview with Spadafora demonstrated that Rivera was informed of his *Miranda* rights. By his own admission, Rivera's interview with Spadafora was endured for only 20 minutes. It was within this brief time frame that Rivera made inculpatory statements to Spadafora. Moreover, Spadafora averred that, apart from his statement that Kaylee was missing, he did not coerce or pressure Rivera into waiving his *Miranda* rights and making a statement. Based on this evidence, it appears that Spadafora did not engage in any coercion apart from stating that Kaylee was missing, and that there were not any aggravating factors that would have amplified the coercive potential of this statement. While Rivera contends that media attention to missing girls in Florida heightened his concern for the fictional Kaylee, he also states that these actual disappearances occurred in 2008 and 2009, which was well after he was questioned by Spadafora on June 5, 2007. Accordingly, the district court did not plainly err in denying Rivera's motion to suppress.

## III.

"We review a verdict challenged for sufficiency of the evidence *de novo*, resolving all reasonable inferences in favor of the verdict." *United States v. Yost*,

479 F.3d 815, 818 (11th Cir. 2007). We will not "disturb the verdict unless no trier of fact could have found guilt beyond a reasonable doubt. *Id.* (quotation omitted).

Under 18 U.S.C. § 2422(b), it is illegal for an individual to attempt to knowingly persuade, induce, entice, or coerce any individual under the age of 18 to engage in illicit sexual activity. 18 U.S.C. § 2422(b). "The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself." *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004). Thus, if a defendant persuaded a minor to engage in an illicit sexual activity, but did not actually engage in a sex act, he still would have violated § 2422(b). *Id.* An actual minor need not be involved in a case in order for a defendant to be found guilty of attempt under § 2422(b). *United States v. Root*, 296 F.3d 1222, 1228 (11th Cir. 2002).

In order to sustain a conviction for attempt, the government must show that the defendant: (1) specifically intended to commit the crime charged, and (2) took a substantial step toward committing the offense. *Yost*, 479 F.3d at 819. A defendant takes a substantial step toward committing an offense where his "objective acts mark his conduct as criminal such that his acts as a whole strongly corroborate the required culpability." *Murrell*, 368 F.3d at 1288. In the context of

13

examining a defendant's attempt conviction under § 2422(b), we have held that a defendant demonstrated his specific intent when, after learning that the purported minor that he was communicating with was underage, he suggested that they meet in order to engage in sexual activity. *Yost*, 479 F.3d at 819. We have also held that a defendant took a substantial step toward violating § 2422(b) by arranging to meet with a purported minor at a specific time and place in order to engage in sexual activity, even though the defendant did not actually arrive at the meeting place. *Id.* at 819-20.

Here, the district court did not err by denying Rivera's Rule 29 motion, because the evidence was more than sufficient to permit a reasonable jury to conclude that Rivera had the specific intent to induce a minor into engaging in sexual conduct, and took a substantial step toward the same. As for Rivera's intent, Kaylee expressly informed him that she was 14 years old, and he acknowledged this information by responding that she looked older than 14 in her profile photographs. On at least two occasions, Rivera asked Kaylee if she was a police officer, a concern that he would not have had unless he knew that they were discussing illegal activity. Although Kaylee may have expressly stated her age only once, she repeatedly made statements indicating that she was a minor—she informed Rivera that she would be in trouble if her mother found about their

14

communications, and that she was on the internet because school was in recess for the summer. Rivera implicitly acknowledged that Kaylee was under a guardian's care when he asked her how she would manage to "get out" in order to meet with him. The foregoing facts leave little doubt that Rivera specifically intended to meet with a minor in order to persuade her to engage in sexual activity. While Rivera argues that Kaylee did not look like she was only 14 years old in her pictures, and did not sound like a 14-year-old on the telephone, the photographs and audio recording of the telephone call were presented to the jury, and the other evidence presented at trial supports the jury's verdict.

In addition, Rivera took a substantial step toward violating § 2422(b) by taking the following actions: (1) making sexually explicit statements to Kaylee; (2) calling her on the telephone; (3) making plans to meet with her at a specific time and place; and (4) driving past the meeting location, which was at least 45 minutes away from his home, at the specified time. Accordingly, his conviction is affirmed.

**AFFIRMED.**