MARTIN, Circuit Judge,
concurring in part, and dissenting in part:
I concur with the reasons given by the majority for affirming Mr. Lee’s conviction for receiving child pornography and for attempting to produce child pornography. However, I write separately, and in dissent, because I do not believe the evidence supports Mr. Lee’s conviction for attempting to entice a child to engage in illicit sexual activity, even when all inferences are made on the side of the government. In order for a person to be convicted of attempting to commit a crime, he must not only intend to commit the crime, he must also take a substantial step towards committing it. I believe the evidence against Mr. Lee fails on the substantial step requirement.
Because I address only whether the evidence presented at trial was sufficient to sustain Mr. Lee’s conviction under 18 U.S.C. § 2422(b), I confine my discussion to the evidence actually presented to the jury. The majority opinion includes information from the Presentence Report — a court document prepared after Mr. Lee’s trial and conviction. The court’s probation officer prepared the Presentence Report and provided it to the district judge, under seal, as an aid in sentencing. The jury never saw nor had any knowledge of the information revealed about Mr. Lee’s past. While the majority’s recitation of Mr. Lee’s prior convictions and alleged past conduct certainly casts an ugly light on Mr. Lee’s character, sound policies caution against relying on these incidents when evaluating Mr. Lee’s culpability in this case. Mr. Lee was not on trial for those admittedly perverse acts, and the bottom line is, of course, that the Presentence Report was not evidence in this case. In any event, I do not undertake to debate the manner in which Mr. Lee has chosen to live his life. I only mean to address the standard for what is legally required to convict any defendant of the crime of attempt.
As set forth by the majority, Mr. Lee communicated with United States Postal Service Inspector Jude Densley, known to him as Candi Kane, over a period of about six months. Candi Kane told Mr. Lee she was the mother of two girls, ages seven and twelve, living in California. Mr. Lee was in Georgia. It is undisputed that Mr. Lee never took any step, substantial or otherwise, to travel to California. He never bought a plane, bus or train ticket. He never set a date for a visit. He never left Georgia.
In order “[t]o sustain [Mr. Lee’s] convictions, we must determine he (1) had the specific intent or mens rea to commit the underlying charged crimes, and (2) took actions that constituted a substantial step *920 toward the commission of [each] crime.” United States v. Yost, 479 F.3d 815, 819 (11th Cir.2007) (citation and internal quotation marks omitted). Precedent requires us to pay close attention to both requirements for an attempt conviction. We have said that the second element of an attempt charge — whether the defendant took a substantial step — requires the government to prove beyond a reasonable doubt that “the defendant’s objective acts, without reliance on the accompanying mens rea, ... mark the defendant’s conduct as criminal.” United States v. Carothers, 121 F.3d 659, 661 (11th Cir.1997) (citing United States v. Oviedo, 525 F.2d 881, 885 (5th Cir.1976)).[1] “In other words, the defendant’s acts, taken as a whole, must strongly corroborate the required culpability; they must not be equivocal.” United States v. McDowell, 705 F.2d 426, 428 (11th Cir.1983).
I well understand that the act criminalized by 18 U.S.C. § 2422(b) is to knowingly entice (or persuade, induce or coerce) a child to engage in criminal sexual activity. The majority describes the crime as attempting to cause assent on the part of the minor, citing our holding in United States v. Murrell, 368 F.3d 1283 (11th Cir.2004). However, I read this Court’s discussion in Murrell to say more than just this. We decided that Mr. Murrell’s conduct, in communicating with a fictitious parent, was “inducement rather than persuasion, enticement, or coercion,” and “focus[ed] upon that component.” Id. at 1287. And in discussing the meaning of “inducement,” we expressed “disfavor” of the following definition of that term: “to lead or move by influence or persuasion; to prevail upon.” Id. (citation, internal quotation marks, and alteration omitted). Instead, the panel adopted the definition “to stimulate the occurrence of; cause,” and found that Mr. Murrell’s negotiations with the purported father of the fictitious child were intended to stimulate the occurrence of illegal sexual conduct with that child. Id. (citation, internal quotation marks, and alteration omitted). Based upon this, I do not read Murrell to obviate the need for proof that a defendant took a substantial step towards stimulating the occurrence of his intended goal of having sex with a child.
It is also noteworthy that the district judge in Mr. Lee’s case instructed the jurors that, in order to convict, they would be required to find that the government proved beyond a reasonable doubt “that the defendant intended to engage in some form of unlawful sexual activity with an individual and knowingly and willfully took some action that was a substantial step toward bringing about and engaging in the sexual activity.” (Trial Tr. 486.) This was the jury charge requested by the government. (Gov’t’s Req. to Charge 17.) By affirming on the basis that Mr. Lee took a substantial step towards “causing assent,” we uphold his conviction on grounds different from those the jury was instructed that it must find.[2]
In any event, and regardless of what emphasis one applies when reading 18 U.S.C. § 2422(b), the defendant in Murrell *921 took a much more substantial step towards violating that statute than did Mr. Lee. Mr. Murrell began his internet chats with the purported parent of a 13-year-old girl on September 16, 2002. Murrell, 368 F.3d at 1284. After arranging a meeting for September 24, 2002, Mr. Murrell arrived at the designated Holiday Inn with a teddy bear, condoms, and the $300.00 he had agreed to pay for sex with the child. Id. at 1288. Mr. Lee was arrested at his home, as he went to his mailbox.
I do not press the view that travel is required for a conviction under 18 U.S.C. § 2422(b). This Court has already decided that it is not. See Yost, 479 F.3d at 820; see also United States v. Gladish, 536 F.3d 646, 649 (7th Cir.2008). However, my review of the jurisprudence of this circuit does not reveal any defendant convicted under section 2422(b) after having made so little effort to consummate the crime.
For example, in United States v. Root, 296 F.3d 1222 (11th Cir.2002), the defendant convicted under 18 U.S.C. § 2422(b) introduced himself to a purported 13-year-old on the Internet, and three days later drove from North Carolina to the Mall of Georgia to meet her at the appointed time and place. Id. at 1228. In United States v. Yost, 479 F.3d 815 (11th Cir.2007), the defendant convicted under this statute found Lynn — a fictitious 13-year-old — online, and within three days set a meeting with her at the McDonald’s near her house for 9:30 a.m. the next day. Id. at 817. Mr. Yost did not show up, but was arrested one week later, when he arrived at the time and location of another meeting he had planned with a second fictional child. In concluding that Mr. Yost’s failure to arrive at the first meeting was not dispositive, we quoted the Tenth Circuit for the proposition that he had “ ‘crossed the line from “harmless banter” to inducement the moment he began making arrangements to meet [the minor], notwithstanding the lack of evidence that he traveled to the supposed meeting place.’ ” Id. at 820 (quoting United States v. Thomas, 410 F.3d 1235, 1246 (10th Cir.2005)). We found that Mr. Yost crossed that same line when he held online chats with the minor, talked to her on the telephone, posted pictures of his genitalia, and made arrangements to meet her at a certain time and place. Id.
Mr. Lee communicated with Candi Kane beginning on September 26, 2007 until his arrest on March 7, 2008. To the extent there was conversation about meeting in person, the plans were never more than general talk about what could happen in the future. Inspector Densley testified at trial that during a telephone conversation on December 27, 2007, Mr. Lee said he would come ten months later, “around October,” and he and Candi Kane discussed which airport would be closest. In the chats, there was nothing even as specific as that.[3] It is quite true that Mr. Lee *922 asked for pornography; sent photographs of his genitalia; and masturbated on a webcam for the purported mother. However, I see no fact in this case demonstrating that Mr. Lee ever took any step to extend his relationship with Candi Kane or her daughters beyond the boundaries of his property in Georgia. For that reason, I do not believe there was proof that Mr. Lee took a substantial step towards enticing a child to engage in illicit sexual conduct, and I would vacate his conviction for attempting that crime.
Furthering Mr. Lee’s argument — even to the limited extent I do here[4] — is not an easy task. His interaction with Candi Kane is disturbing, and their conversations repugnant. I in no way intend to minimize the threat that sexual predators pose to children in our society or the life-shattering effects their actions have on their victims. Nevertheless, I write out of concern that the majority opinion does not clearly demarcate despicable but lawful talk from a criminal attempt punishable by up to thirty years in prison. For this reason, I respectfully dissent from the majority’s decision to uphold Mr. Lee’s conviction pursuant to 18 U.S.C. § 2422(b).

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

. Neither party referred us to the jury charge. However, we have noted that when a defendant challenges the sufficiency of evidence against him, he implicitly questions the adequacy of the district court’s jury instructions. United States v. Bonavia, 927 F.2d 565, 570 (11th Cir.1991). For this reason, this Court is permitted to look, sua sponte, to the jury charge as it relates to Mr. Lee’s section 2422(b) conviction. Id.

. The transcript of a December 13, 2007 chat between Mr. Lee and Candi Kane reveals that Mr. Lee typed: "Meeting is not so far fetched that it will never happen you know. I have a brother in the LA area." (Gov't Ex. C-4, at 4.) Candi Kane replied that the location was six and one-half hours from her. Id. The text of their December 21, 2007 chat shows that Mr. Lee typed: "I'm ready to make a trip[ ] out to meet you guys and talk first. I don’t[ ] want their first meeting to be that of losing their virginity to me. Friends first." (Gov't Ex. C-6, at 5.) On December 26, 2007, he typed: "I want to visit you at home before we do this too .... Perhaps next year around this time would be good to do this or at least by the end of Oct[ober].” (Gov't Ex. C-7, at 4.) On February 26, 2008, Mr. Lee typed: "I don’t know. Calif[ornia] is such a long way from here and the money is an issue right now. Perhaps over the next few months we can come up with a plan that will allow us to meet during the summer after the girls are out of school.” (Gov't Ex. C-28, at 4.) In the same conversation, he wrote: "I might just fly *922 out there and have you meet me some place .... I have a friend in Utah so perhaps I’ll fly there then drive to visit you. Do you know how far you are from Salt Lake City?” {Id. at 5.) There were no further conversations about a meeting before Mr. Lee's arrest on March 7, 2008.

. As set forth by the majority, Mr. Lee was sentenced to 300 months of incarceration on each of three counts, to be served concurrently. This being the case, even if we were to reverse the section 2422(b) conviction, we would not change Mr. Lee’s term of incarceration by a single day.