[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-10440
Non-Argument Calendar

————————————————

D.C. Docket No. 8:15-cr-00519-JSM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLAYTON JUNIOR THORNBURG,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(February 1, 2019)

Before TJOFLAT, JORDAN and HULL, Circuit Judges.

PER CURIAM:

After a bench trial, Clayton Thornburg was convicted of attempting to

knowingly induce or entice a minor to engage in sexual activity, in violation of 18

U.S.C. § 2422(b), attempting to transfer obscene material to a minor under 16 years of age, in violation of 18 U.S.C. § 1470, committing a felony offense involving a minor while required to register as a sex offender, in violation of 18 U.S.C. § 2260A, and transporting child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1).  He is serving a total 336-month sentence.

On appeal, Thornburg challenges his conviction for attempting to entice a minor to engage in sexual activity.  He argues that the government did not produce sufficient evidence to prove that he intentionally took a substantial step toward the commission of his offense.  Thornburg also challenges the district court's application of a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for his use of a computer in calculating his offense level for transporting child pornography.  He contends that, because almost all child pornography cases involve the use of a computer, the base offense level took such use into account.

After careful and thorough review, we affirm Thornburg's convictions and sentences.  We first recount the relevant trial evidence and procedural history in this case.

## I.  TRIAL EVIDENCE

The charges arose from Thornburg's online communications with an undercover agent posing as a minor from August through November of 2015.

2

Department of Homeland Security Investigations Special Agent Tavey Garcia established a fictitious online identity of a 13-year-old girl. Agent Garcia used that identity on online platforms that are known by law enforcement to be prolific with individuals who have a sexual interest in children, including MBuzzy.com, a social media chat application accessible through mobile devices and the internet, and Kik Messenger, a chat application for mobile devices.

In connection with this case, Agent Garcia accessed MBuzzy.com, and in her MBuzzy profile, Agent Garcia identified herself as "JMK," a 13-year-old girl in middle school. On August 6, 2015, someone using the profile name "loves2lickpussi," who was later determined to be Thornburg, contacted JMK on MBuzzy.com. Thornburg's profile indicated that he was a 43-year-old male who was "feeling naughty."

During Thornburg's and JMK's initial conversations on MBuzzy.com in August 2015, JMK said that she was 13 years old and lived in Florida. When Thornburg found out that JMK was 13, JMK offered to stop chatting, but Thornburg stated that he was still willing to chat with her. Thornburg told JMK that he was 43 years old, "old enough to be [her] daddy."

Thornburg suggested chatting with JMK on Kik Messenger, and JMK said that she did not like to give out her Kik username because Kik users must be 18,

3

and she previously had been kicked off Kik for being underaged. Thornburg assured JMK that she was not the first underaged girl he had talked to on Kik and that he would "never report and turn anybody in for any reason." He also warned JMK that she might not like his Kik username because it might be "too naughty" for her. Thornburg revealed that his Kik username was "luv2beurdaddi2."

Agent Garcia viewed Thornburg's profile on Kik, saw that he claimed his name was "Sam Thomas," and began chatting with him on Kik. Thornburg viewed JMK's profile, which included a picture, and said to her: "Wow. Damn. You're freaking gorgeous. So is that a good thing I'm old enough to be your dad?"

As the Kik conversations continued in August 2015, the messages became very graphic and sexual in nature. Thornburg expressed his desire to be with JMK and his physical attraction to her, stating that "I am liking the fact you're young more and more, babe." Thornburg then began to describe sex acts that he wanted to do with JMK. Thornburg stated "[y]ou're going to be fun to be with in and out of bed," and JMK asked what he was going to do with her. Thornburg stated that he would kiss her all over her body and hoped that they would make love. JMK asked if that would hurt, and Thornburg replied, "[i]f you let me inside you the first time, yes, it's going to hurt some, but it will be gentle—I'm sorry—but I'll be gentle as I can be." Thornburg stated that he could not wait to "taste" JMK and to

4

lick her "boobs and vagina." Thornburg explained what that would feel like for JMK, and he asked her if she wanted to feel his penis and have him touch her naked body. Thornburg asked to see her naked body, but JMK claimed that her camera was broken. Thornburg asked JMK about calling him "daddy" and explained that some girls liked to do that during sex.

During September 2015, the messages continued with JMK saying that they probably should not be together because they could get in trouble and because Thornburg had work. Thornburg replied that he was "not worried about the trouble part." He told JMK that "[t]he funny part is that it doesn't have to be anything sexual and you have grown on me more and more every time we've talked," and apologized for not contacting her more frequently. JMK replied, "Look. I'm 13-and-a-half. I can tell when I'm getting played, you know?" but Thornburg assured her that he was not playing her.

On September 28, 2015, Thornburg began sending JMK pornographic videos and images, the first being a video of oral sex. The video was accompanied by a message from Thornburg expressing his desire to engage in oral sex with JMK but that he would have to wait until he saw her.

On October 7, 2015, Thornburg asked JMK whether she liked the size of his penis, and she replied that she did not know and would have to trust him.

5

Thornburg then sent a picture of an erect penis, which he claimed was a photo of himself.  JMK expressed concern about the size of his penis, and Thornburg assured her that it would fit inside her and that he would use lubrication.

Two days later, Thornburg sent a video of an adult male having sex with a teenage girl so JMK could see "what it's like for a young girl to have sex."  He told JMK that the girl in the video was probably 14 or 15, and that he "wished it was [us]."  Thornburg then sent JMK an image of child pornography and told her that he believed that the girl in the image was younger than JMK.  He said that the girl in the image was too young for his taste and that he preferred JMK's age or older.

Thornburg told JMK, graphically, of his strong desire to have sex with her but stated that she would have to want to have sex with him as well.  Thornburg told JMK that he would teach her how to perform oral sex and described the instructions in graphic detail.

As the conversations continued, Thornburg asked JMK, "[s]o after showing you the videos, how does that make you feel about sex?"  Thornburg asked JMK to send him nude photos of herself, but JMK claimed that she could not.  Thornburg told JMK that he would love to have photos or a video of their first time having sex.

6

Thornburg then sent JMK another pornographic video of oral sex and asked if he could do that to her. Throughout their conversations, Thornburg repeatedly referred to the fact that he was old enough to be JMK's dad and referred to himself as her "daddy." Thornburg stated "I can't wait for you to say [daddy] while I'm inside you," and he then sent JMK a video showing an adult male engaged in a sex act with a child around 10 years old. He told JMK that he wanted to perform the same act with her as was depicted in the video. Thornburg told JMK that he was sending her the videos because he wanted her to get an idea of what might happen.

Thornburg then sent JMK three more videos, one showing two women engaged in a sex act, one showing a child performing a sex act on an adult male, and one showing a woman performing a sex act on a male. Thornburg stated that JMK could "practice" on him all she wanted and asked if she promised to practice on him. Thornburg said that he would be there soon and that JMK was "going to show daddy [her] pussy." He later stated "I know you're very curious about sex, and I'd be very glad to teach you about it like a daddy should be." Thornburg then sent JMK two videos depicting three people engaging in sex acts and afterward discussed having sex with JMK and another girl at the same time.

Thornburg stated that he wanted to be with JMK even if her mother was home, and JMK said that her mother would not approve and that Thornburg would

7

end up in jail.  He replied, "I know society would look down upon it, but I don't care what society thinks.  I care about what you think.  He stated that he liked JMK's age and that he "get[s] to be [her] naughty daddy. . . . And fuck [her] naughty little princess's pussy."

Thornburg asked JMK whether she was really going to let him do what he wanted sexually.  JMK said yes, and then Thornburg sent her a video of a woman bound with her legs and arms spread apart and engaged in a sex act with a machine or foreign object, explaining that it was part of a master/submissive lifestyle, and asked JMK what she thought.  Thornburg also asked if JMK knew what bestiality was, and he sent her a video of a woman receiving oral sex from a dog.

Thornburg and JMK began discussing him travelling to Florida to have sex with her.  Thornburg explained details such as waiting for JMK at the gate of her apartment complex, what JMK would be wearing, and what time JMK's mother would leave.  He also explained how he planned to have sex with JMK when he arrived.  He then sent JMK another pornographic video, telling her that the girl appeared to be about her age.

Thornburg never met with JMK as discussed.  After Agent Garcia determined that the Kik user was Thornburg, law enforcement obtained warrants to

8

search his residence and arrest him.  Thornburg was arrested and a search warrant was executed at his residence in Mississippi on November 18, 2015.

## II.  PROCEDURAL HISTORY

### A.    Indictment

In a second superseding indictment, a federal grand jury indicted Thornburg with: (1) attempting to knowingly induce or entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 1); (2) attempting to transfer obscene material to a minor under 16 years of age, in violation of 18 U.S.C. § 1470 (Count 2); (3) committing a felony offense involving a minor while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count 3); and (4) transporting child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1) (Count 4).[1]

### B.    Trial

The district court held a two-day bench trial.  Following the trial, the district court determined that the government had proven each element of all four remaining counts and found Thornburg guilty.

---

[1]Thornburg was also charged with possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Count 5), but that count was dismissed without prejudice on the first day of trial.

## C.    Presentence Investigation Report

Thornburg's presentence investigation report ("PSI") grouped Counts 1 and 2 (attempting to entice a minor to engage in sexual activity and attempting to transfer obscene material to a minor under 16) into a single group and, pursuant to U.S.S.G. § 2G1.3, assigned a base offense level of 28.  The PSI added two levels because the offense involved the use of a computer or an interactive computer service to entice a minor to engage in prohibited sexual conduct, pursuant to U.S.S.G. § 2G1.3(b)(3), which resulted in an adjusted offense level of 30 for the first group.

Count 4 (transporting child pornography) was placed by itself into a second group and, pursuant to U.S.S.G. § 2G2.2(a)(2), assigned a base offense level of 22. The PSI applied several specific offense characteristics to the second group, including a two-level enhancement because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of child pornography, pursuant to § 2G2.2(b)(6).  After applying all of the enhancements, Thornburg's adjusted offense level for the second group was 47.  Pursuant to U.S.S.G. § 3D1.4, Thornburg's combined adjusted offense level was 47, which was also his total offense level.

The PSI also noted that, pursuant to U.S.S.G. § 2A3.6(b), Count 3 (committing a felony offense involving a minor while being required to register as a sex offender) had a mandatory ten-year term of imprisonment, to run consecutively to any other sentence imposed.

Turning to Thornburg's criminal history, the PSI reported that he had Illinois convictions for indecent solicitation of a child/aggravated criminal sexual abuse and unlawful possession of child pornography in 2004 and 2009, respectively.[2] Thornburg's criminal history score was seven, which placed him in a criminal history category of IV.  Because Thornburg was a repeat and dangerous sex offender against minors, his criminal history category was increased to V, pursuant to U.S.S.G. § 4B1.5.  With a total offense level of 47 and a criminal history category of V, Thornburg's advisory guideline range was life imprisonment.

### D.    Objections to PSI

Thornburg made several objections to the PSI, including an objection to all of the specific offense characteristics applied to Counts 1, 2, and 4.  He argued that

---

[2]Before trial, the government and Thornburg stipulated to the following facts, among others:  (1) Thornburg is a convicted sex offender required to register in Mississippi; (2) he was convicted of indecent solicitation of a child in Illinois in 2004; (3) he was convicted of possession of child pornography in Illinois in 2009; and (4) he had admitted to law enforcement officers in 2006 that he previously had been arrested for attempting to meet an underage girl he had met on the internet.

the specific offense characteristics were inherent to his crimes of conviction, and, thus, were not unique and could lead to unreasonable sentences.

### E.    Sentencing

At sentencing, Thornburg reiterated his objections.  In particular, Thornburg objected to the application of an enhancement for computer use, pursuant to § 2G2.2(b)(6), arguing that the use of a cell phone or computer should not trigger an enhancement because such devices are used in almost every child pornography case.  Overruling Thornburg's objection, the district court concluded that the computer enhancement was called for in the Guidelines, but agreed with Thornburg's reasoning and stated that it would take his computer enhancement arguments into consideration when making a variance to his sentence.

The district court adopted the PSI's facts and guideline calculations and noted that the advisory guideline range was life imprisonment.  After hearing from both parties, the district court imposed a total sentence of 336 months' imprisonment, consisting of 216 months on each of Counts 1 and 4 and 120 months on Count 2, to run concurrently, and 120 months on Count 3, to run consecutively to all other counts, which represented a downward variance from the advisory guideline range of life imprisonment.

### III.  SUFFICIENCY OF THE EVIDENCE

12

On appeal, Thornburg argues that the evidence was insufficient to support his Count 1 conviction for attempting to induce or entice a minor to engage in sexual activity under 18 U.S.C. § 2422(b).[3] Thornburg contends that he did not take a substantial step toward enticing a minor to engage in a sex act because he never talked to the person over the phone, but rather, communicated with her through only electronic means. Also, he argues that one of his chat messages demonstrates that he was willing to maintain a non-sexual relationship with the 13-year-old girl, showing that he did not intend to entice her to engage in a sex act.

Section 2422(b) criminalizes both the completed offense of enticing a child, and an attempt to commit the offense, as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (emphasis added).

A defendant may be convicted of an attempt under § 2422(b) based on conduct directed toward a fictitious minor. United States v. Yost, 479 F.3d 815,

---

[3]We review de novo whether sufficient evidence supports a conviction, resolving all reasonable inferences in favor of the verdict. United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010). We will not reverse unless no reasonable trier of fact could find guilt beyond a reasonable doubt. Id.

13

819 & n.2 (11th Cir. 2007).  A finding that a defendant committed the crime of attempt requires proof that the defendant:  (1) had the required intent to commit the underlying charged crime; and (2) took actions that constituted a "substantial step" toward the commission of the crime.  Id. at 819.

To prove the intent element of a § 2422(b) offense, the government must show that the "defendant intended to cause assent on the part of the minor, not that [the defendant] acted with the specific intent to engage in sexual activity."  United States v. Lee, 603 F.3d 904, 914 (11th Cir. 2010) (quotation marks omitted).  It is the persuasion, inducement, enticement, or coercion of the minor, rather than the sex act itself, that is prohibited by the statute.  United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004) (involving § 2422(b)).  An attempt to "stimulate or cause the minor to engage in sexual activity" fits the statutory definition of inducement.  Id. at 1287.

To prove the conduct element of a § 2422(b) attempt, the government must prove that the defendant took a substantial step toward causing assent on the part of the minor, not necessarily toward causing actual sexual contact.  Lee, 603 F.3d at 914.  A defendant takes a substantial step toward completing a crime when his "objective acts mark his conduct as criminal and, as a whole, strongly corroborate the required culpability."  Yost, 479 F.3d at 819 (quotation marks omitted).

14

In determining whether the record supports a finding that the defendant took a substantial step in committing a § 2422(b) offense, we look at the totality of the defendant's conduct. Lee, 603 F.3d at 916. This is a fact-intensive analysis that does not categorically require any particular activity or course of conduct on the part of the defendant. United States v. Rothenberg, 610 F.3d 621, 627 (11th Cir. 2010).

This Court has explained that the "very nature of the underlying offense—persuading, inducing, or enticing engagement in unlawful sexual activity—necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense." Id. (upholding sentencing enhancements based on § 2422(b)-type misconduct where the defendant engaged in online chats with adults who had influence over young children, and he graphically instructed the adults as to how to molest the children and persuade them to comply with the abuse).

For example, in Yost, this Court determined that the substantial step requirement was met where the defendant sent messages to the minor in which he asked her to perform sex acts on him, posted a picture of his genitalia online, spoke to the minor by phone, and arranged to meet her so they could engage in sexual

15

activity, even though he did not arrive at the designated time and place. 479 F.3d at 819-20.

Similarly, in Lee, this Court determined that the substantial step requirement was met where the defendant, over the course of several months, discussed in graphic detail when and how he wanted to engage in sexual acts with the minors, sent graphic photographs to the minors, and promised the minors gifts. 603 F.3d at 915.

In both of these decisions, after weighing the totality of the defendants' actions, we concluded that communication alone constituted a substantial step. See Rothenberg, 610 F.3d at 626-27 (discussing Lee and Yost). We do "not require firm plans to travel where . . . the defendant, for several months, took other steps sufficient to achieve the end that is the object of the attempt." Lee, 603 F.3d at 915.

As an initial matter, Thornburg challenges the sufficiency of the evidence for only his Count 1 conviction under 18 U.S.C. § 2422(b). Although he references his guilt as a whole in the argument heading in his brief, he expressly discusses the elements of § 2422(b) only in his argument. Therefore, Thornburg has abandoned any sufficiency argument regarding the other three counts of his conviction. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir.

16

2003) (stating that issues or claims not clearly raised by a party on appeal are considered abandoned).

Here, the trial evidence, recounted above, sufficiently proves that Thornburg intended to induce or entice a minor to engage in sexual activity in violation of § 2422(b).  See Yost, 479 F.3d at 819; Murrell, 368 F.3d at 1286.  Throughout Thornburg's chat messages with JMK, he told her that he wanted to engage in various sex acts with her, but only if she wanted to, and explained to her what the sex acts would feel like.  He encouraged her to send him nude photos of herself.  Thornburg told her that he intended to teach her how to perform sex acts on him and asked her to promise that she would practice sex acts on him.  Thornburg sent the purported 13-year-old girl pornographic videos and images as a means of teaching her various sex acts and discussed the videos and images with her to make her feel more comfortable about engaging in sex acts with him.

Also, considering the totality of Thornburg's conduct, the evidence amply supports that Thornburg took a substantial step toward causing the purported minor to assent to illicit sexual activity.  See Lee, 603 F.3d at 915-16; Yost, 479 F.3d at 819-20.  Communications alone are sufficient to support such a conviction.  See Rothenberg, 610 F.3d at 627.  And the communications here show that Thornburg attempted to induce the fictious 13-year-old girl into engaging in sex acts through

17

desensitizing her to sexual imagery and conversation by sending and discussing pornographic images and videos, teaching her how to perform different sex acts, sending her a picture of his penis, encouraging her to send him nude photos, and planning to eventually meet her at her home in Florida to engage in sex acts with her.

Thornburg was not required to engage in any particular action or course of conduct to take a substantial step toward committing a § 2422(b) offense, so it is not dispositive that he did not speak with the purported minor over the phone. See id. Similarly, although Thornburg stated once that he would be willing to maintain a platonic relationship with the purported minor, this isolated statement is outweighed by the repeated graphic evidence in the record that "strongly corroborate[s] the required culpability" to support a conviction under § 2422(b). See Yost, 479 F.3d at 819. The evidence, construed in the light most favorable to the verdict, shows that Thornburg did not want to be the purported minor's friend, rather he intended to entice her to engage in numerous sex acts with him. See Farley, 607 F.3d at 1333. The trial evidence is more than sufficient to allow a reasonable trier of fact to find Thornburg guilty beyond a reasonable doubt. See id. We thus affirm Thornburg's conviction under § 2422(b).

## IV.  COMPUTER USE ENHANCEMENT UNDER U.S.S.G. § 2G2.2(b)(6)

18

Thornburg also argues that the district court improperly applied a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for the use of a computer during the commission of the Count 4 offense, which was applied in calculating his offense level for his conviction for transporting child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1).  He contends that the underlying base offense level already accounted for the use of a computer because virtually every child pornography case involves the use of a computer.[4]

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."  De La Cruz Suarez, 601 F.3d at 1220 (quotation marks omitted).  Further, "[d]ouble counting a factor during sentencing is permissible if the Sentencing Commission intended the result, and if the result is permissible because each section concerns conceptually separate notions related to sentencing."  Id. (quotation marks omitted).  We "presume[] the Sentencing Commission intended to apply separate guideline sections cumulatively, unless specifically directed otherwise."  United States v. Matos-Rodriguez, 188 F.3d 1300, 1310 (11th Cir. 1999).

_____

[4]We review de novo a claim of double counting under the Guidelines.  United States v. De La Cruz Suarez, 601 F.3d 1202, 1220 (11th Cir. 2010).

19

The Guidelines provide for a two-level increase to a defendant's base offense level if the offense involves the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of material, or for accessing with intent to view material involving the sexual exploitation of a minor.  U.S.S.G. § 2G2.2(b)(6).

We have determined that an enhancement under § 2G2.2(b)(6) does not amount to double counting when it is applied to a conviction under 18 U.S.C. § 2252(a)(1), which makes it unlawful to "knowingly transport[] or ship[] [child pornography] using any means or facility of interstate or foreign commerce." United States v. Little, 864 F.3d 1283, 1291 (11th Cir. 2017) (quotations omitted). The base offense level applicable to § 2252(a)(1), we explained, does not fully account for the use of a computer because that base offense level may be applied whether a defendant uses a computer or not.  Id.

Under our prior precedent rule, we are bound by our prior panel decisions unless and until they are overruled by the Supreme Court or this Court en banc. United States v. Brown, 342 F.3d 1245, 1246 (11th Cir. 2003).  Therefore,

20

Thornburg's argument that the computer enhancement under § 2G2.2(b)(6) was improperly applied is foreclosed by our binding precedent. Id.[5]

In any event, we note that the district court's imposition of the computer enhancement under § 2G2.2(b)(6) was harmless. Thornburg's combined adjusted offense level was 47, which was also his total offense level. However, a total offense level of more than 43 is treated as an offense level of 43 pursuant to U.S.S.G. ch. 5, pt. A, cmt. n.2 (2016). Without the two-level enhancement, Thornburg's total adjusted offense level would have been 45, which the district court still would have been obligated to treat as 43. Therefore, any alleged error in the district court's application of § 2G2.2(b)(6) was harmless. See United States v. Sarras, 575 F.3d 1191, 1220 n.39 (11th Cir. 2009) (stating that the alleged error was harmless because total offense level would have remained the same). We affirm the district court's application of the enhancement under § 2G2.2(b)(6).

## V.  CONCLUSION

For the foregoing reasons, we affirm Thornburg's four convictions and sentences.

**AFFIRMED.**

---

[5]Thornburg specifically challenges only the application of the computer enhancement to his Count 4 conviction under § 2252(a)(1), and, thus, he has abandoned any challenge against the other computer enhancement that was applied against him. See Jernigan, 341 F.3d at 1283 n.8.

21