[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14786
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cr-00267-RBD-KRS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DENNIS MICHAEL WILKERSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 13, 2017)

Before HULL, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, Dennis Michael Wilkerson was convicted of two counts of attempting to induce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and sentenced to 210 months' imprisonment.  These convictions were based on evidence that on two occasions he negotiated with an FBI agent who was pretending to be a father to have sex with the father's fictional daughter. Wilkerson now appeals the sufficiency of the evidence supporting his convictions and the district court's calculation of his sentence using the Sentencing Guidelines.

He raises four challenges:  First, he argues there was insufficient evidence to establish his intent or that he took a substantial step toward the offenses.  Second, he contends there was insufficient evidence to establish that he attempted to induce a minor to engage in sexual activity prohibited by Florida law.  Third, he challenges the district court's application of a two-level enhancement to his guidelines offense level for being convicted of multiple counts because, he alleges, his two putative victims were the same.  Fourth, he challenges the court's application of a five-level enhancement to his guidelines offense level for engaging in a pattern of prohibited sexual conduct because, he argues, his statute of conviction cannot be the basis for such an enhancement.[1]  After careful review, we reject each of these challenges as unfounded and affirm Wilkerson's convictions and sentence.

_____

[1] Wilkerson also filed a petition for an initial hearing *en banc*, which we hereby **DENY.**

2

## I.    BACKGROUND

Wilkerson was indicted on two counts of attempting to induce a minor to engage in criminal sexual activity by means of interstate commerce, in violation of 18 U.S.C. § 2422(b).  These two counts were based on two separate interactions Wilkerson had with the same undercover agent.

First, in July 2015, Wilkerson responded by email to an advertisement by a father and daughter in Altamonte Springs, Florida looking for sexual encounters posted on the classified ad website Craigslist.  The advertisement had been posted by FBI task force officer John McElyea, who was working undercover to prevent crimes against children.  McElyea, posing as a 50 year old man named Bob Bjorn, replied to Wilkerson's email and explained that he had a 12 year old daughter who was interested in men and "roses," which McElyea later testified meant compensation.  After some initial hesitancy, Wilkerson asked for a picture of the fictional minor and, when Bjorn would not provide that, her description.  Wilkerson eventually asked how much it would cost to receive oral sex from the fictional minor.  He then negotiated with Bjorn and agreed on a price of $40 for oral sex.  Wilkerson sought to meet immediately.  Although Bjorn stated he and his daughter had a prior engagement, Wilkerson reached out twice more that day attempting to set up a meeting.  Wilkerson offered to pay again the following day as long as they could meet that night.  Over the next two days, Wilkerson traded

3

messages with Bjorn attempting to schedule a meeting.  Ultimately, the July conversation died without a meeting after Wilkerson and Bjorn exchanged a total of 39 messages.

Several months later, in October 2015, Wilkerson responded to a nearly identical advertisement posted by McElyea on Craigslist about a father and daughter in Kissimmee, Florida looking for "roses."  This time McElyea was operating under the alias James James, again a 50 year old man.  Wilkerson's initial email requested oral sex, and he persisted in this request after James clarified that his daughter was 12.  Wilkerson and James traded a total of 49 messages, eventually settling on a price and arranging a meeting.  When Wilkerson arrived at the meeting place, he was arrested carrying the agreed-upon money.  After his arrest, Wilkerson admitted to communicating with another father back in July in an attempt to have sexual contact with that man's 12 year old daughter.

Wilkerson went to trial before a jury.  At trial, the district court took judicial notice of Florida Statutes § 800.04(4)(a), which criminalizes lewd and lascivious battery.  Based on this statute, the court instructed the jury that engaging in sexual activity, which it defined to include oral sex, with a person between the ages of 12 and 16 was a crime under Florida law.  The jury convicted Wilkerson on both counts.

4

At sentencing, the district court calculated Wilkerson's advisory guidelines range as 210 to 262 months' imprisonment based on an offense level of 32 and a criminal history category of I.  The court arrived at this offense level by applying a two-level enhancement because Wilkerson was convicted of multiple counts and a five-level enhancement because Wilkerson engaged in a pattern of activity involving prohibited sexual conduct.  Ultimately, the court sentenced Wilkerson to 210 months' imprisonment followed by eight years of supervised release.  Wilkerson filed this appeal.

## II.    STANDARDS OF REVIEW

We review the sufficiency of the evidence *de novo*.  *United States v. Hunt*, 187 F.3d 1269, 1270 (11th Cir. 1999).  The evidence is sufficient to support a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (internal quotation marks omitted).  We view "the evidence in the light most favorable to the government and draw[] all reasonable inferences and credibility choices in favor of the jury's verdict."  *United States v. Boffil-Rivera*, 607 F.3d 736, 740 (11th Cir. 2010) (internal quotation marks omitted).

With respect to the Sentencing Guidelines, we review "purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with 'due

5

deference.'" *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136–37 (11th Cir. 2004). When reviewing a district court's application of a guidelines provision to the facts, "due deference" is tantamount to clear error review. *See United States v. White*, 335 F.3d 1314, 1318–19 (11th Cir. 2003). For a finding to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed." *Rodriguez-Lopez*, 363 F.3d at 1137 (internal quotation marks omitted). Whether charges should have been grouped together for guidelines purposes is "primarily" a question of law that we review *de novo*, but to the extent it involves the application of the guidelines to the facts of the case, the district court's fact findings should be reviewed with due deference. *United States v. Williams*, 340 F.3d 1231, 1243–44 (11th Cir. 2003).

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

1. <u>The evidence established that Wilkerson intended to induce a minor and took a substantial step toward doing so on two occasions.</u>

The government elicited sufficient evidence to uphold both of Wilkerson's convictions. Because Wilkerson was convicted under the attempt clause of the statute, the government needed to prove that he intended to commit the crime and took a substantial step toward that goal. Here it proved both elements for both of the convictions. First, the government proved Wilkerson's intent by showing that he negotiated in each case with an adult intermediary. Wilkerson attempts to

6

distinguish his communications from those of defendants whose § 2422(b) convictions we have upheld previously, but Wilkerson's communications plainly were intended to cause the fictional minors to have sex with him, which is all the statute requires. Second, by eliciting testimony of the extensive negotiations between Wilkerson and the fictional father over the cost and logistics of Wilkerson's desired sexual encounters, the government proved that Wilkerson took substantial steps toward the commission of both crimes. Wilkerson challenges much of the government's substantial step evidence as irrelevant, but we disagree and conclude that even without the evidence he challenges, the government elicited sufficient evidence to support Wilkerson's convictions.

Section 2422(b) states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). The attempt clause of the statute can be violated when the defendant communicates with a government agent pretending to be an adult intermediary, rather than a minor, so long as the defendant believes he is communicating with an adult intermediary. *United States v. Murrell*, 368 F.3d 1283, 1286–88 (11th Cir. 2004). In order to show a violation of § 2422(b)'s attempt clause, the government must prove two things: specific intent to induce a

minor to engage in unlawful sex and a substantial step toward that goal. *Id.* at 1286.

Sufficient evidence supported Wilkerson's two attempt convictions. First, the government proved that Wilkerson "using the internet, acted with a specific intent to . . . induce . . . a minor to engage in unlawful sex." *Id.* at 1286. Specific intent is key because "[t]he underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself." *Id.* In *Murrell*, we found sufficient evidence of this specific intent where the defendant negotiated online to pay $300 to an undercover officer that he believed was a father to have sex with the father's fictional daughter. 368 F.3d at 1285–86. Likewise, Wilkerson negotiated over email in both July and October with a person he believed to be a father acting as an adult intermediary to set a price for receiving oral sex from a minor. Both times, Wilkerson and the adult intermediary settled on a price for the sex act and attempted to arrange a meeting with the minor. As in *Murrell*, Wilkerson never communicated directly with the fictional minor but did "communicate[] with an adult who he believed to be the father of a" minor "who presumably exercised influence over the girl." *Id.* at 1287. So here, as in *Murrell*, the defendant's "agreement with the father, who was acting as an agent or representative, implied procuring the daughter to engage in sexual activity." *Id.*

8

Accordingly, the evidence was sufficient to prove that Wilkerson acted with the specific intent to induce a minor to engage in unlawful sex.

Wilkerson insists that his case is distinguishable from *Murrell* and other similar cases because here there was no evidence that he intended through his communications to persuade a minor to have illicit sex with him. Specifically, Wilkerson contends that he never requested that any messages be passed on to the fictional minors, never participated in any grooming behavior, never made any promises to the minors, and offered nothing of value in excess of the required payment. But none of that is necessary to sustain a conviction. As this Court explained in *Murrell*, the statute prohibits both persuading and inducing a minor to engage in criminal sexual activity, and the terms carry different meanings. *See id.* at 1287. We defined "induce" as "to stimulate or cause." *Id.* Here, Wilkerson negotiated, offered money, and attempted to arrange meetings with the minor, all of which the jury reasonably could have concluded were motivated by the specific intent to cause the fictional minors to have sex with him. This evidence of Wilkerson's intent was sufficient to support his convictions.

Second, the government proved that Wilkerson took a substantial step toward causing both of the fictional minors to assent. This proof must be in the form of "objective acts [that] mark [Wilkerson's] conduct as criminal such that his acts as a whole strongly corroborate the required culpability." *Id.* at 1288.

9

Whether a given act or course of conduct was a substantial step towards the offense "is a question of fact that will vary from case to case." *United States v. Rothenberg*, 610 F.3d 621, 627 (11th Cir. 2010). We must consider the "totality" of the defendant's conduct in making this determination. *United States v. Yost*, 479 F.3d 815, 820 (11th Cir. 2007).

Communications soliciting sexual activity can constitute a substantial step toward a violation of § 2422(b) even without further overt action. *Rothenberg*, 610 F.3d at 626–27. In *United States v. Lee*, 603 F.3d 904 (11th Cir. 2010), for example, we affirmed a conviction under § 2422(b)'s attempt clause based on the defendant's chat room and telephone conversations with an undercover agent posing as the mother of two daughters. *Id.* at 917–18. In *Lee*, the defendant initiated contact with the putative mother, asked if he could meet her daughters soon, sent a photograph of his genitalia to be shared with the daughters, gave his telephone number, spoke with the mother on the telephone about when and how he could travel to meet the girls, and promised to send gifts to the girls, among other communications. *Id.* at 916–17. We held that "these acts, taken as a whole, allowed the jury to find that [the defendant's] conduct was criminal." *Id.* at 917 (internal quotation marks omitted). Similarly, in *Yost*, this Court upheld two convictions under § 2422(b)'s attempt clause, one of them based solely on communications. 479 F.3d at 816–17. There, the defendant chatted online with a

10

fictional 13 year-old girl, asked her questions about her appearance, posted a picture of his genitalia, asked if she would perform oral sex on him, spoke with her on the phone, and arranged a meeting that the defendant ultimately did not attend. *Id.* at 817.  Assessing these actions as a whole, we concluded that the defendant "crossed the line from mere 'talk' to inducement" such that "a reasonable jury could have found [the defendant] committed a substantial step." *Id.* at 820.

We conclude that a rational jury could have found that Wilkerson took a substantial step toward each of his § 2422(b) violations.  In July, Wilkerson exchanged 39 messages with a fictional father negotiating for the father's daughter to perform oral sex on Wilkerson for payment.  After learning her age, Wilkerson asked for the girl's picture and her description.  Once they settled on a price, Wilkerson tried to arrange a meeting several times in one day and then several times in subsequent days.  Wilkerson even offered to pay for a second sex act the following day if they could meet when he wanted.  In October, Wilkerson and a fictional father exchanged 49 messages negotiating for the father's daughter to perform oral sex on Wilkerson.  Once again, Wilkerson tried multiple times to arrange a meeting, and this time succeeded in setting one up.  He showed up to the meeting and was arrested carrying the agreed-upon money.  Taken as a whole, we conclude that these acts marked Wilkerson's conduct as criminal and crossed the line from mere talk to inducement.  The jury therefore reasonably could have

11

concluded that Wilkerson took the substantial step required for each of his

§ 2422(b) violations.

Wilkerson contends that the government failed to prove that he took

substantial steps toward securing the fictional minors' assent because it focused on

conduct that could not have been in furtherance of § 2422(b).  He emphasizes that

the conduct this statute targets is inducing a minor to engage in illegal sex *through*

*means of interstate commerce*.  He argues that any preparations for a physical

encounter such as arranging a meeting or traveling to it cannot be a substantial step

toward that goal because the crime must be accomplished through means of

interstate commerce.  That is, Wilkerson argues that the actual inducement must

take place via the internet or telephone, so any substantial step toward an attempted

inducement must also be via the internet or telephone.  But as the government

points out, this Court frequently has listed travel as a substantial step toward

attempted inducement.  *See, e.g.*, *United States v. Farley*, 607 F.3d 1294, 1334

(11th Cir. 2010) (noting that the defendant's "trip to Atlanta to meet the mother

and child was not the only step he took"); *Yost*, 479 F.3d at 820 (highlighting as

substantial steps that defendant "arranged to meet [the minor] and traveled to the

meeting spot"); *Murrell*, 368 F.3d at 1288 (listing among substantial steps

defendant's two-hour journey to meet minor girl for sex).  Further, our focus in

conducting the substantial step inquiry is whether Wilkerson's acts, taken as a

12

whole, marked his conduct as criminal. *See Murrell*, 368 F.3d at 1288. Even if traveling to a meeting was not itself in furtherance of inducing a minor via means of interstate commerce to engage in criminal sexual activity, that travel certainly corroborates the criminal nature of the earlier communications between Wilkerson and the fictional father. That is, in light of the fact that Wilkerson actually traveled to meet the putative minor, his earlier communications with the fictional father negotiating a price for that minor to perform sexual activity became all the more clearly criminal in nature. And in any event, a jury reasonably could have concluded that the communications with the fictional fathers alone amounted to substantial steps toward the commission of each crime. The government therefore elicited sufficient evidence to uphold Wilkerson's convictions.

2.      The evidence established that the sexual activity Wilkerson attempted to induce a minor to perform was prohibited by Florida law.

A reasonable jury could have found that Wilkerson attempted to induce the fictional minors to engage in criminal sexual activity, as required for a § 2422(b) conviction. First, the evidence discussed above supported a finding that Wilkerson attempted to induce the fictional minors to perform oral sex on him. Second, the district court properly instructed the jury that oral sex with a girl of the fictional girls' age would have violated Florida law.[2] Wilkerson argues that his conduct did

---

[2] At trial and on appeal, Wilkerson framed his argument that there was no possible Florida law violation as a challenge to the indictment. But "[t]here is no summary judgment

13

not violate Florida law because there was no child involved.  But § 2422(b) requires only that the conduct he attempted to induce must violate the law, which was the case here.

First, there was ample evidence that Wilkerson attempted to induce the fictional minors to perform oral sex on him.  In July, Wilkerson raised the prospect of receiving a "BJ," which McElyea testified stands for "blow job" or oral sex, after learning that the fictional minor was 12 years old.  Trial Tr. 55 (Doc. 139).[3] After some haggling, the fictional father clarified that it would cost "$40 for a blow job now."  *Id.* at 59.  Several days later, the fictional father asked Wilkerson, "So what would you be down for?"  *Id.* at 63.  Wilkerson responded, "Probably just BJ."  *Id.*  In October, Wilkerson initiated the conversation in response to a different ad with the question "How about a BJ?"  *Id.* at 70.  After learning that this new fictional minor was 12 years old, Wilkerson responded, "I'm just looking for a BJ."  *Id.* at 72.  The fictional father followed up, asking Wilkerson if he "ever had a BJ from a 12-year-old" because he did not want Wilkerson "to get stage fright and not wanna pay up."  *Id.* at 73.  Wilkerson responded, "I have not.  It all depend on if she looks and acts mature.  But I'm sure I'll be fine."  *Id.* at 74.  This

---

procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."  *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (citation omitted).  We therefore consider his argument a challenge to the sufficiency of the evidence underlying both convictions.

[3] "Doc." refers to the numbered docket entries in the district court record of the case.

14

evidence was more than sufficient for a jury to conclude that Wilkerson attempted to induce the minors to perform oral sex on him.

Second, the district court properly instructed the jury that oral sex between Wilkerson and a 12 year old would have violated Florida law.  At trial, the district court took judicial notice of Florida Statutes § 800.04(4)(a), which criminalizes lewd and lascivious battery, and instructed the jury that engaging in sexual activity (including oral sex) with a person between the ages of 12 and 16 was a crime under Florida law.  District courts are entitled to take judicial notice of state law and instruct the jury on it.  *See United States v. Clements*, 588 F.2d 1030, 1037 (5th Cir. 1979);[4] *see also United States v. Davila-Nieves*, 670 F.3d 1, 7–8 (1st Cir. 2012) (calling it "proper for the district court to take judicial notice of the [state] statute" and "explain the relevant state law to the jury" in a § 2422 case). Florida Statutes § 800.04(4)(a) provides that

> [a] person commits lewd or lascivious battery by:  1. Engaging in sexual activity with a person 12 years of age or older but less than 16 years of age;  or 2. Encouraging, forcing, or enticing any person less than 16 years of age to engage in sadomasochistic abuse, sexual bestiality, prostitution, or any other act involving sexual activity.

Fla. Stat. § 800.04(4)(a).  "Sexual activity" is defined as "the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal

---

[4] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981 are binding on this Court.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

15

penetration of another by any other object." *Id.* § 800.04(1)(a).  Under its plain language, § 800.04(4)(a) criminalizes engaging in sexual activity (including oral sex) with a person between the ages of 12 and 16.  The district court's instruction was therefore correct as a matter of law.

Combining its finding that Wilkerson attempted to induce the fictional minors to perform oral sex on him with the district court's instruction that oral sex between Wilkerson and the fictional minors would have violated Florida law, a rational jury could have found that Wilkerson attempted to induce the fictional minors to engage in "sexual activity for which any person can be charged with a criminal offense."  18 U.S.C. § 2422(b).

Wilkerson contends that this finding was incorrect as a matter of law because soliciting an adult to commit lewd or lascivious conduct is not illegal under Florida Statutes § 800.04(4)(a).  He cites Florida case law for the proposition the person actually solicited must be under 16 years old and that it is not enough for a defendant to believe the victim is under 16.  But we need not examine this Florida case law because Wilkerson's argument misconstrues § 2422(b).

Section 2422(b) criminalizes the persuasion, inducement, enticement, or coercion of the minor and not the sex act itself.  *Murrell*, 368 F.3d at 1286.  It also expressly criminalizes attempts to persuade, induce, entice, or coerce the minor.  *United States v. Lanzon*, 639 F.3d 1293, 1299 (11th Cir. 2011).  Therefore,

16

§ 2422(b) may impose criminal liability even if the defendant's conduct does not actually violate the state statute. *See id.* at 1298–99. If the government presents sufficient evidence that the defendant would have violated the state statute if he had completed the sex act he attempted to induce, then the government has proven a violation of § 2422(b). *See id.* at 1299. Here, Wilkerson attempted to induce two fictional 12 year olds to perform oral sex on him. Had that sexual act been completed, it would have violated § 800.04(4)(a). So there was sufficient evidence to support the jury's verdict.

## B. Application of the Sentencing Guidelines

### 1. The district court correctly applied an enhancement to Wilkerson's guidelines range for being convicted of multiple counts.

The district court applied a two-level enhancement to Wilkerson's offense level because he was convicted of multiple counts. Wilkerson argues that this enhancement was improper because there was only one fictional victim, so the counts should have been grouped together for sentencing purposes. If the counts had been grouped, the multiple count enhancement would not have applied. But the evidence supports the district court's decision not to group the two counts together because there were two fictional victims; we thus affirm.

The Sentencing Guidelines generally require that a defendant convicted of multiple counts of the same or different crimes be assessed a combined offense level calculated based on the individual offense levels of each count. *See generally*

17

U.S.S.G. § 3D1.1.  When a defendant is convicted of two equally serious counts—that is, two counts carrying the same offense level—the guidelines provide that the combined offense level will be the offense level of one of those counts plus two. *See id.* § 3D1.4.  Wilkerson, for example, was convicted of two counts of 18 U.S.C. § 2422(b), each of which has an offense level of 30.[5]  Adding two levels for the second equally severe conviction, his combined offense level for these two counts is 32.  The district court applied this two-level multiple count enhancement in determining Wilkerson's sentence.

Some counts are so closely related, however, that the guidelines require them to be grouped together before a combined offense level is calculated.  *See id.* § 3D1.2.  The guidelines direct courts to calculate an offense level for each group of closely related counts before combining those groups under the procedure explained above.  *See id.* § 3D1.3.  Where multiple counts involve the same victim and either the same act or multiple acts connected by a common objective, the guidelines provide that the offense level for the group of counts is the same as the offense level for the most serious of those counts.  *Id.* § 3D1.3(a).  If Wilkerson's two § 2422(b) convictions were grouped because they involved the same victim

---

[5] The base offense level for an 18 U.S.C. § 2422(b) violation is 28.  U.S.S.G. § 2G1.3(a)(3).  The district court added two levels to the base offense level of each count because each count involved the use of a computer.  *See id.* § 2G1.3(b)(3)(B).  The district court overruled Wilkerson's objection to the application of this specific offense characteristic at sentencing, and Wilkerson does not appeal that ruling.  Each of his § 2422(b) violations therefore has an offense level of 30.

and common objective, for example, the offense level for the grouped counts would be 30. Because those counts would be grouped and Wilkerson was convicted of no other crimes, the two-level multiple count enhancement would not apply. *See id.* § 3D1.4 cmt. n.1[6] ("Application of the rules . . . may produce a single Group of Closely Related Counts. In such cases, the combined offense level is the level corresponding to the Group.").

Wilkerson argues that the district court should have grouped his counts together because they involved the same fictional victim. There is some evidence to that effect. Both the July and October communications took place using Craigslist, spoke of a 50 year-old father and 12 year-old daughter, and used the term "roses" to mean money. But there is also evidence to the contrary. The communications were sent under two different aliases and referenced two different Florida locations. And evidence at trial indicated that Wilkerson himself believed the two fictional 12-year olds to be different: An agent testified that when Wilkerson was arrested as a result of the October communications he admitted having previously talked to another father about having sexual contact with his 12 year-old daughter. Given this evidence, the district court did not clearly err in accepting the probation office's finding that there were two separate victims; thus,

---

[6] The commentary to the guidelines is authoritative. See U.S.S.G. § 1B1.7; *see also Stinson v. United States*, 508 U.S. 36, 38 (1993).

19

the court did not err refusing to group Wilkerson's two counts or in applying a two-level multiple-count enhancement to his sentence.

> 2.    <u>The district court correctly applied an enhancement to Wilkerson's guidelines range for engaging in a pattern of prohibited sexual conduct.</u>

The district court also applied a five-level enhancement to Wilkerson's offense level because he engaged in a pattern of activity involving prohibited sexual conduct.  The court based this enhancement on Wilkerson's two convictions for attempted inducement.  Wilkerson argues that these convictions cannot serve as predicates for the enhancement, but this argument is foreclosed by statutory language.  He also contends that there is insufficient evidence supporting one of his convictions, but we disagree.  We therefore affirm the district court's application of the pattern of activity enhancement.

U.S.S.G. § 4B1.5(b)(1) requires a five-level increase in the defendant's offense level

> [i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither [the career-offender enhancement in] § 4B1.1 nor [the repeat-offender enhancement in § 4B1.5(a)] . . . applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct.

U.S.S.G. § 4B1.5(b)(1).  Because the district court applied neither the career-offender nor repeat-offender enhancements, this pattern of activity enhancement

20

applies if Wilkerson's offense of conviction was a covered sex crime and he engaged in a pattern of activity involving prohibited sexual conduct.

First, Wilkerson's 18 U.S.C. § 2422(b) convictions were "covered sex crime[s]." An application note defines a "covered sex crime" to include "an offense, perpetrated against a minor, under . . . chapter 117 of . . . title [18] . . . ." U.S.S.G. § 4B1.5 cmt. n.2(A)(iii). "[A]n attempt or a conspiracy to commit" such an offense is also a covered sex crime. *Id.* § 4B1.5 cmt. n.2(B). Section 2422, which Wilkerson was convicted of violating, is within chapter 117 of title 18, *see* 18 U.S.C. § 2422, meaning his offenses of conviction were covered sex crimes.

Second, Wilkerson engaged in the requisite pattern of activity. "[T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.* § 4B1.5 cmt. n.4(B)(i). "Prohibited sexual conduct" includes "any offense described in 18 U.S.C. § 2426(b)(1)(A)." *Id.* § 4B1.5 cmt. n.4(A). As relevant here, that includes offenses under chapter 117 of title 18. 18 U.S.C. § 2426(b)(1)(A). Once again, Wilkerson's § 2422 convictions fall within chapter 117. *See id.* § 2422. These convictions are therefore "prohibited sexual conduct." Because Wilkerson has two § 2422 convictions, he engaged in a pattern of activity

21

involving prohibited sexual conduct.[7]  The district court properly applied a five-level pattern of activity enhancement to Wilkerson's offense level.

Wilkerson challenges the application of this enhancement on two grounds. First, he argues that chapter 117 offenses like his are not included within the definition of prohibited sexual conduct.  This argument is plainly foreclosed by the text of 18 U.S.C. § 2426(b)(1)(A), which references offenses "under this chapter," meaning chapter 117.[8]  Second, Wilkerson contends that the lack of evidence supporting his § 2422 convictions renders the district court's conclusion that he engaged in prohibited conduct on two occasions clearly erroneous.  We concluded above that sufficient evidence supported both convictions, so we reject this argument.  Accordingly, we affirm the district court's application of a five-level pattern of activity enhancement to Wilkerson's offense level.

## IV.    CONCLUSION

For these reasons, the judgment of the district court is **AFFIRMED**.

---

[7] The fact that the enhancement is based entirely on the offenses of conviction is of no moment.  An application note provides that "[a]n occasion of prohibited sexual conduct may be considered for purposes of" the two-level pattern of activity enhancement "without regard to whether" it "occurred during the course of the instant offense."  U.S.S.G. § 4B1.5 cmt. n.4(B)(ii).

[8] Wilkerson's emphasis on this argument is understandable because neither the government in its arguments below nor the district court in its reasoning mentioned the "under this chapter" language of 18 U.S.C. § 2426(b)(1)(A).  We may affirm a sentence for any reason supported by the record, however, so we decline to consider the district court's alternative reason for imposing the pattern of activity enhancement in light of § 2426's clear language. *See United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).

22