[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16697
Non-Argument Calendar

_____

D.C. Docket Nos. 1:16-cv-02200-TWT,
1:00-cr-00879-TWT-LTW-1

NATHANIEL CHARLTON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 28, 2018)

Before MARCUS, FAY and HULL, Circuit Judges.

PER CURIAM:

Nathaniel Charlton is a federal prisoner serving a total 324-month sentence

after he pled guilty in 2001 to one count of conspiracy to commit Hobbs Act

robbery, in violation of 18 U.S.C. § 1951, and one count of possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).  The district court sentenced Charlton to 240 months' imprisonment for the Hobbs Act robbery conspiracy conviction and 84 consecutive months' imprisonment for the § 924(c) conviction.  Charlton appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his § 924(c) sentence of 84 months based on the Supreme Court's recent decision in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015).  After careful review, we affirm.

## I.    BACKGROUND FACTS

### A.    Offense Conduct

Charlton's convictions arose out of a crime spree Charlton committed with two codefendants, Bakari Green and Eddie Lovan Jones.  On the evening of May 10, 2000, Charlton and his two codefendants decided to rob a series of restaurants in Gwinnett County, Georgia.  At each restaurant, the defendants threw a large object or rock through a glass door to gain entry.  At each, the defendants used masks, dark clothing, and bandanas, and Charlton used a TEC-9 handgun for at least three of the robberies.

Just after midnight, the three defendants drove to the first restaurant, a McDonald's on Five Forks Trickum Road.  Inside, Charlton encountered two employees, struck one on the lip with the barrel of the TEC-9, and forced both

2

employees onto the floor in an office.  Charlton took more than $3,600 and fled.  At 12:55 a.m., the three defendants drove to the second restaurant, a Wendy's on Sugarloaf Parkway.  Two of the defendants held an employee at gunpoint and then took more than $2,000.[1]  Then, the defendants proceeded to the third restaurant, another McDonald's on Pike Street.  There, Charlton confronted a cleaning lady at gunpoint, put her in a food freezer, demanded that she open the safe, and, when she was unable to do so, made her remove three rings from her fingers, and then left with the rings.

The fourth and final incident occurred at a Chili's on Buford Drive at approximately 3:30 a.m.  Charlton once again used the TEC-9 to place the cleaning person in a freezer.  Despite Charlton's threats, the cleaning person was unable to open the safe, and Charlton left empty-handed.

As the defendants left the Chili's, a police officer spotted the vehicle and attempted a traffic stop.  After a high-speed car chase, police officers apprehended the defendants as they fled on foot.  During searches of the vehicle, the area where the defendants were apprehended, and Charlton's residence, the officers found, inter alia, the TEC-9 used in the robberies, bags of cash, a receipt from one of the McDonald's restaurants, and the three rings taken from the cleaning woman at the Pike Street McDonald's.

---

[1]It is unclear whether Charlton was one of the defendants who entered the Wendy's or if he waited in the car.

3

**B.    Indictment**

On December 12, 2000, Charlton, Green, and Jones were indicted on nine counts in connection with the crime spree.  Count One of the indictment charged the defendants with conspiracy to commit the Hobbs Act robbery "of various restaurants," in violation of 18 U.S.C. § 1951.  Count One further charged as the overt acts in furtherance of the conspiracy the "offenses described in Counts Two through Nine of this indictment," which were "incorporated by reference . . . as if fully set forth herein."

Counts Two through Nine charged the defendants with either completed or attempted Hobbs Act robberies under 18 U.S.C. §§ 1951 and 2 and with corresponding firearm offenses under 18 U.S.C. § 924(c) for each of the four targeted restaurants.  Specifically, Counts Two and Three related to the Hobbs Act robbery of a McDonald's on Five Forks Trickum Road.  Counts Four and Five related to the Hobbs Act robbery of the Wendy's.  Counts Six and Seven related to the attempted Hobbs Act robbery of the McDonald's on Pike Street.  Counts Eight and Nine related to the attempted Hobbs Act robbery of the Chili's.

Ultimately, Charlton pled guilty to the Hobbs Act robbery conspiracy charged in Count One and the firearm offense charged in Count Seven, which charged him with using and carrying a firearm during the attempted Hobbs Act

4

robbery in Count Six. Therefore, only Counts One, Six and Seven are relevant to this appeal, and we set out the allegations in those counts in detail.

> Count One charged that Charlton and his codefendants:

> did conspire, confederate, agree, and have a tacit understanding with one another to take and obtain personal property then in the custody and control of various restaurants, all businesses operating in interstate commerce . . . , from the persons of . . . employees of the said restaurants, against their will, by means of actual and threatened force, violence, and fear of injury, . . . and by doing said acts did unlawfully obstruct, delay, and interfere with commerce . . . .

As mentioned above, as overt acts of the conspiracy to commit Hobbs Act robbery, Count One of the indictment incorporated by reference all of the substantive robbery and firearm offenses in Counts Two through Nine.

> Count Seven charged that Charlton and his codefendants did use and carry a firearm during the attempted robbery in Count Six, stating that Charlton and his codefendants:

> aided and abetted by one another, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, the attempted robbery described in Count Six above, did use and carry a firearm, that is, a nine millimeter TEC-9 semiautomatic handgun equipped with a thirty-round ammunition magazine, and in doing so, did brandish the firearm by displaying said firearm and otherwise making its presence known to persons then present during the offense, in order to intimidate . . . .

(emphasis added). Count Six, in turn, charged that Charlton and his codefendants committed the attempted robbery of the McDonald's on Pike Street, stating Charlton and his codefendants:

5

aided and abetted by one another, did unlawfully attempt to take and obtain personal property then in the custody and control of the McDonald's restaurant located at 751 Pike Street, Lawrenceville, Georgia, a business operating in interstate commerce . . . , from the person of, and in the presence of an employee of the said business, against her will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of the employee, and by doing said acts did unlawfully obstruct, delay, and interfere with commerce . . . .

## C.    Guilty Plea and Sentencing

On September 24, 2001, as Charlton's trial was about to begin, the district court held a change-of-plea hearing. The plea agreement provided that Charlton would plead guilty to Counts One and Seven of the indictment in exchange for dismissal of the other counts.  The plea agreement also stated that "defendant admits that he is pleading guilty because he is in fact guilty of the crime(s) charged in Count(s) One and Seven of the Indictment."  Likewise, it included a limited waiver of Charlton's right to appeal his sentence or collaterally attack it in post-conviction proceedings on any ground except a sentence in excess of the statutory maximum penalty.

During the plea colloquy, the government summarized the terms of the plea agreement on the record, which included the following in relevant part:

Judge, the plea agreement that the parties have entered into, the first term is that the Defendant is pleading guilty to Count One and Count Seven of the Indictment.  Count One charges a violation, a conspiracy to commit Hobbs Act armed robberies.  Count Seven alleges a violation of 18 U.S.C. § 924(c), and that relates to the attempted armed robbery of the Pike Street McDonald's in this case.

6

(emphasis added).

The district court then requested that the government state each element of the offenses to which Charlton intended to plead guilty. With respect to Count One, after describing the elements for completed and attempted Hobbs Act robbery, the government stated that it was required to prove "certain overt acts which include the offense described in Counts Two through Nine of the Indictment," and then reviewed all of the overt acts described in Counts Two through Nine, including the completed robberies of the Five Forks Trickum Road McDonald's and the Wendy's, the attempted robberies of the Pike Street McDonald's and the Chili's, and the use of the firearm during each of those robbery offenses.

With respect to Count Seven, the government explained that it was required to prove that Charlton, along with his codefendants and aided and abetted by each other, used and carried a firearm "during and in relation to a crime of violence, which in this case is the attempted robbery of the Pike Street McDonald's alleged in Count Six." Charlton affirmed his understanding that he was charged with conspiracy to commit armed Hobbs Act robbery and charged with using of a firearm in the course of a crime of violence.

With respect to evidence in support of Counts Six and Seven, the government explained that at trial it would have shown that in the early hours of

7

May 11, 2000, after committing the two successful robberies at the Five Forks Trickum McDonald's and the Wendy's, Charlton and his codefendants proceeded to the "McDonald's restaurant located at 751 Pike Street in the city of Lawrenceville" and arrived when "the restaurant employees had left for the evening." Charlton entered the restaurant by throwing a rock through the glass door, held up a cleaning lady with a TEC-9 handgun that he pointed at her numerous times, put the cleaning lady in a food freezer, demanded that she open the safe, made her remove her jewelry, and then left.

When asked by the district court about the government's factual proffer, Charlton did not take issue with any of the details and admitted that he was, in fact, guilty of the offenses alleged in Counts One and Seven. The district court found that Charlton was competent, determined that his plea was entered voluntarily and with full knowledge, accepted his plea, and adjudicated him guilty of Counts One and Seven of the indictment.

Shortly thereafter, Charlton sought to withdraw his guilty plea. Charlton's motion claimed that his attorney had not adequately consulted with him or prepared for trial and then coerced him to enter into the plea agreement by telling Charlton that he could not win his case and faced eighty years in prison. After a hearing, at which Charlton was represented by new counsel and Charlton and his

8

former counsel testified, the district court denied Charlton's motion to withdraw his guilty plea.

The district court sentenced Charlton to a total term of 324 months' imprisonment—240 months as to Count One and 84 months as to Count Seven to be served consecutively. The district court also sentenced Charlton to three years of supervised release and ordered that he pay a $200 special assessment.

**D.     Direct Appeal**

On March 19, 2002, Charlton filed a direct appeal challenging the district court's denial of his pretrial motion to suppress evidence obtained after his arrest and his motion to withdraw his guilty plea. On January 2, 2003, this Court affirmed the district court's rulings on these two issues. See United States v. Charlton, No. 02-11879 (11th Cir. Nov. 15, 2002) (unpublished). With respect to his guilty plea, this Court concluded that the record refuted Charlton's claims and showed that Charlton's guilty plea was knowing and voluntary. Id., slip op. at 2-4.

**E.     Section 2255 Motion to Vacate**

On June 17, 2016, Charlton filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. In his § 2255 motion, Charlton requested that the district court "set-aside the judgment" and "correct his

sentence" on Count Seven because his conviction under 18 U.S.C. § 924(c) was improperly predicated upon a conspiracy to commit Hobbs Act robbery.

Charlton argued that this conviction on Count Seven was improper in light of Johnson, 576 U.S. ___, 135 S. Ct. 2551, and Welch v. United States, 578 U.S. ____, 136 S. Ct. 1257 (2016). Specifically, he contended that the definition of "crime of violence" under § 924(c)(3)(B)'s risk-of-force clause is unconstitutional in light of the Supreme Court's declaration that similar language in 18 U.S.C. § 924(e)(2)(B)(ii) was unconstitutionally vague.

The government responded that Charlton's § 2255 motion was barred by the collateral attack waiver in his plea agreement and that his Johnson claim was procedurally defaulted because he did not raise it on direct appeal. Alternatively, the government argued on the merits that Johnson did not invalidate § 924(c)(3)(B)'s risk-of-force clause, and, even if it did, Charlton's predicate offense for his Count Seven conviction was his aiding and abetting attempted Hobbs Act robbery (as described in Count Six)—not conspiracy—and qualified as a crime of violence under § 924(c)(3)(A)'s use-of-force clause, which was not implicated by Johnson.

In its October 6, 2016 order, the district court denied Charlton's § 2255 motion to vacate. The district court found that Charlton had "waived the right to collaterally attack his sentence" but further stated that "[a]ssuming that Johnson

10

applies to 18 U.S.C. § 924(c), the Defendant's conviction in Count Seven stands because the underlying offense of attempted Hobbs Act robbery has as an element the use, attempted use[,] or threatened use of physical force against the person of another."[2]  Charlton filed a notice of appeal and a motion for a certificate of appealability ("COA") on October 24, 2016.  The district court granted a COA as to "whether the Defendant is entitled to set aside or modify his sentence as a result of the decision in Johnson v. United States, 135 S. Ct. 2551 (2015)."

## II.    DISCUSSION

### A.    The ACCA and Johnson

The ACCA, which imposed enhanced sentences for certain defendants with three prior violent felonies or serious drug offenses, defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

---

[2]Although the district court determined that Charlton's § 2255 motion was barred by his collateral attack waiver, on appeal the government explicitly abandons this argument, contending that the collateral attack waiver does not apply to Charlton's Johnson claim because it attacks both his conviction and sentence.  We need not address the import of Charlton's collateral attack waiver because, even assuming it does not bar Charlton's current § 2255 motion, the district court properly denied the motion on the merits.

11

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).

In Johnson, the Supreme Court held that the residual clause of the ACCA was unconstitutionally vague. 576 U.S. ___, 135 S. Ct. at 2557-58, 2563. The Supreme Court clarified that, in holding that the residual clause is void, it did not call into question the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. Id. at 2563. In Welch, the Supreme Court thereafter held that Johnson announced a new substantive rule that applies retroactively to cases on collateral review. Welch, 578 U.S. at ___, 136 S. Ct. at 1264-65, 1268.

## B.    Section 924(c)

Distinct from the provisions in § 924(e), § 924(c) makes it a crime to use or carry a firearm during a crime of violence or a drug trafficking crime and provides for a mandatory consecutive sentence. 18 U.S.C. § 924(c)(1). For purposes of § 924(c), a "crime of violence" means an offense that is a felony and:

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

12

18 U.S.C. § 924(c)(3)(A)-(B).  The first part of the "crime of violence" definition is often referred to as the "use-of-force" clause and the second part the "risk-of-force" clause.  The phrase "physical force" requires "violent force" or "force capable of causing physical pain or injury to another person."  See Johnson v. United States, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271 (2010) ("Curtis Johnson") (interpreting the nearly identical elements clause of the ACCA).

## C.    Charlton's § 924(c) Claim as to Count Seven

On appeal, Charlton argues that: (1) the district court erred in determining that his § 924(c) firearm offense in Count Seven was predicated on the attempted Hobbs Act robbery in Count Six (to which he did not plead guilty), rather than the Hobbs Act robbery conspiracy in Count One (to which he did plead guilty); (2)  post-Johnson, a conspiracy to commit Hobbs Act robbery cannot qualify as a crime of violence because § 924(c)'s risk-of-force clause is unconstitutionally vague; and (3) even if attempted Hobbs Act robbery in Count Six is the right predicate offense for Count Seven, it does not categorically qualify as a crime of violence under § 924(c)'s use-of-force clause because it can be accomplished without the requisite "violent force."[3]

For the reasons that follow, we conclude that the underlying offense supporting Charlton's § 924(c) firearm conviction was, as explicitly alleged in

---

[3]In a § 2255 proceeding, we review the legal issues pertaining to de novo and the factual findings for clear error.  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004).

Count Seven, the attempted Hobbs Act robbery described in Count Six. Further, under our binding precedent, an attempted Hobbs Act robbery categorically constitutes a crime of violence under § 924(c)(3)(A)'s use-of-force clause. As such, we conclude that Charlton is not entitled to any relief under Johnson, regardless of whether Johnson applies to invalidate § 924(c)(3)(B)'s risk-of-force clause.

**D.      Offense Underlying Charlton's § 924(c) Conviction in Count Seven**

Charlton pled guilty to Counts One and Seven. However, Charlton is incorrect that the conspiracy in Count One was the underlying predicate offense for his § 924(c) conviction in Count Seven. Count Seven of the indictment explicitly charged Charlton and his codefendants with using, carrying, and brandishing a firearm "during and in relation to . . . the attempted robbery described in Count Six." (emphasis added). In turn, Count Six charged Charlton and his codefendants with aiding and abetting attempted Hobbs Act robbery at "the McDonald's restaurant located at 751 Pike Street, Lawrenceville, Georgia." [4] Thus, Count Seven of Charlton's indictment clearly identifies the crime of violence as the attempted Hobbs Act robbery of the Pike Street McDonald's.

Moreover, when Charlton pled guilty to Count Seven, the plea transcript shows that what he was admitting to was using, carrying, and brandishing a firearm

---

[4]Although the district court's order does not mention aiding and abetting specifically, the indictment indicates that this was the complete offense in Count Six.

during and in relation to the attempted robbery of the Pike Street McDonald's described in Count Six. In fact, the government identified the underlying offense and explained its factual underpinnings numerous times leading up to Charlton's guilty plea.[5]

Charlton argues that because the only other offense he pled guilty to was the conspiracy to commit Hobbs Act robberies in Count One, then that conspiracy must be the underlying crime of violence in Count Seven. Charlton's argument ignores the plain language of § 924(c) and the indictment itself. A § 924(c) conviction requires only that the crime of violence or drug trafficking offense be one "for which the person may be prosecuted in a court of the United States." See 18 U.S.C. § 924(c)(1)(A) (emphasis added). This Court has held that the government need show "only the fact of the [predicate] offense, and not a conviction." United States v. Frye, 402 F.3d 1123, 1128 (11th Cir. 2005).

Thus, the district court correctly determined that the underlying offense supporting Charlton's § 924(c) firearm conviction in Count Seven was the aiding and abetting attempted Hobbs Act robbery described in Count Six. Because

---

[5]In its summary of the plea agreement, the government specified that "Count Seven alleges a violation of 18 U.S.C. § 924(c), and that relates to the attempted armed robbery of the Pike Street McDonald's in this case." Then, in listing the elements of Count Seven, the government explained its burden of showing that the defendant, "during and in relation to a crime of violence, which in this case is the attempted robbery of the Pike Street McDonald's alleged in Count Six, used and carried a firearm." And, during its factual proffer, the government explained the evidence underlying the charges to which Charlton intended to plead guilty, including the facts of Count Six at the "Pike Street McDonald's" after two robberies on the morning of May 11, 2000.

Charlton's predicate offense was aiding and abetting attempted Hobbs Act robbery, we have no reason to address whether a conspiracy to commit Hobbs Act robbery qualifies as a crime of violence under § 924(c).

**E.    Attempted Hobbs Act Robbery and the Use-of-Force Clause**

The next question is whether, post-<u>Johnson</u>, Charlton's underlying offense of aiding and abetting <u>attempted</u> Hobbs Act robbery is a crime of violence under § 924(c). Based on this Court's precedent, we conclude that aiding and abetting an attempted Hobbs Act robbery categorically qualifies as a crime of violence under the use-of-force clause in § 924(c)(1)(A). As such, Charlton is not entitled to any relief under <u>Johnson</u>, regardless of whether <u>Johnson</u> applies to invalidate the risk-of-force clause in § 924(c)(1)(B).

The Hobbs Act makes it a crime to obstruct, delay, or affect commerce "by robbery" or to "attempt[] or conspire[] to do so" or to "commit[] or threaten[] physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section . . . ." 18 U.S.C. § 1951(a). "Robbery" under the Hobbs Act is defined as "the unlawful taking or obtaining of personal property" from a person "by means of actual or threatened force, or violence, or fear of injury, immediate or future." <u>Id.</u> § 1951(b)(1). To be convicted of an "attempt," a defendant must: (1) have the specific intent to engage in the criminal conduct with which he is charged; and (2) have taken a substantial step toward the

16

commission of the offense.  United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007).  "A substantial step can be shown when the defendant's objective acts mark his conduct as criminal and, as a whole, 'strongly corroborate the required culpability.'"  Id. (quoting United States v. Murrell, 368 F.3d 1283, 1288 (11th Cir. 2004)).

This Court has already held that both substantive Hobbs Act robbery in violation of 18 U.S.C. § 1951(b)(1) and aiding and abetting Hobbs Act robbery in violation of § 1951(b)(1) and § 2 "clearly qualif[y] as a 'crime of violence' under the use-of-force clause in § 924(c)(3)(A)."  In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016) (addressing aiding and abetting Hobbs Act robbery); In re Saint Fleur, 824 F.3d 1337, 1340-41 (11th Cir. 2016) (addressing Hobbs Act robbery).  In line with In re Saint Fleur, four other circuits have come to the same conclusion that Hobbs Act robbery cannot be committed without the use, attempted use, or threatened use of violent force.  See United States v. Gooch, 850 F.3d 285, 291-92 (6th Cir. 2017); United States v. Rivera, 847 F.3d 847, 848-49 (7th Cir. 2017); United States v. Hill, 832 F.3d 135, 140-44 (2d Cir. 2016); United States v. House, 825 F.3d 381, 387 (8th Cir. 2016).[6]

---

[6]The Third Circuit has also concluded that Hobbs Act robbery is a crime of violence under § 924(c)(3)(A)'s use-of-force clause, but did so without applying the categorical approach. See United States v. Robinson, 844 F.3d 137, 141-44 (3d Cir. 2016).

17

We reject Charlton's argument that a Hobbs Act robbery "by means of fear of injury" can be committed without the use, attempted use, or threatened use of physical force.  First, this argument is inconsistent with In re Sams, 830 F.3d 1234, 1238-39 (11th Cir. 2016) and United States v. Moore, 43 F.3d 568, 572-73 (11th Cir. 1994), in which this Court concluded that federal bank robbery "by intimidation," in violation of 18 U.S.C. § 2113(a), and federal carjacking "by intimidation," in violation of 18 U.S.C. § 2119, both have as an element the use attempted use, or threatened use of physical force and thus qualify as crimes of violence under § 924(c)(3)(A).

Moreover, as the Second Circuit explained in Hill, "there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence," and, to that end, "a defendant 'must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues.'"  832 F.3d at 140 (quoting in part Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007)); see also United States v. McGuire, 706 F.3d 1333, 1337 (11th Cir. 2013) (citing Gonzales v. Duenas-Alvarez and explaining that to determine whether an offense is categorically a crime of violence under § 924(c), courts must consider whether "the plausible applications of the statute of conviction all require the use or threatened use of force . . . ." (emphasis added)).  Charlton has not

18

pointed to any case at all, much less one in which the Hobbs Act applied to a robbery or attempted robbery that did not involve, at a minimum, a threat to use physical force. And Charlton's own case clearly involved a threat of physical force, as he undisputedly pointed a TEC-9 handgun at the cleaning lady when he demanded that she open the McDonald's safe and then forced her into a freezer and took her jewelry. Indeed, Charlton does not offer a plausible scenario, and we can think of none, in which a Hobbs Act robber could take property from the victim by putting the victim in fear of injury without at least threatening to use force capable of causing injury. See Curtis Johnson, 559 U.S. at 140, 130 S. Ct. at 1271 (stating that the phrase "physical force" as used in the ACCA's "violent felony" definition means "violent force—that is, force capable of causing physical pain or injury to another person").

While this Court has not yet addressed attempted Hobbs Act robbery, the definition of a crime of violence in the use-of-force clause in § 924(c)(3)(A) explicitly includes offenses that have as an element the "attempted use" or "threatened use" of force against the person or property of another. See 18 U.S.C. § 924(c)(3)(A).

Taken together, these considerations lead us to conclude that aiding and abetting an attempted Hobbs Act robbery similarly qualifies as a crime of violence under § 924(c)'s use-of-force clause. That is, if, as this Court has held, the taking

19

of property in the manner required by § 1951(b)(1) necessarily includes the use, attempted use, or threatened use of physical force, then by extension the attempted taking of such property in the same manner must also include the use, attempted use, or threatened use of physical force.  Cf. United States v. Wade, 458 F.3d 1273, 1278 (11th Cir. 2006) (explaining that an attempt to commit a crime enumerated as a violent felony under § 924(e)(2)(B)(ii) is also a violent felony); see also Hill v. United States, 877 F.3d 717, 718-19 (7th Cir. 2017) ("When a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony.").

While Charlton contends that § 924(c)'s risk-of-force clause is unconstitutionally vague in light of Johnson, we need not address this issue to resolve his appeal.[7]  This is so because, even if Charlton is correct and Johnson's void-for-vagueness holding also invalidates § 924(c)'s risk-of-force clause, Charlton's underlying offense of aiding and abetting attempted Hobbs Act robbery qualifies as a "crime of violence" under § 924(c)'s use-of-force clause, which, like the ACCA's nearly identical elements clause, would remain unaffected by Johnson.

## III.    CONCLUSION

---

[7]We note, however, that in Ovalles v. United States, 861 F.3d 1257 (11th Cir. 2017), this Court recently rejected the Johnson argument Charlton now raises.

20

In sum, aiding and abetting attempted Hobbs Act robbery—as described in Count Six and explicitly charged as the underlying predicate in Count Seven— categorically qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause. Even assuming arguendo that Johnson invalidates the § 924(c)(3)(B) risk-of-force clause, Charlton's § 924(c) conviction and sentence on Count Seven remains valid under the § 924(c)(3)(A)'s use-of-force clause. Accordingly, because Charlton is not entitled to relief on Count Seven, the district court properly denied Charlton's § 2255 motion.

**AFFIRMED**.